**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

GORDON DOUGLAS COPE, JR.,
*Defendant-Appellant.*

No. 06-50441

D.C. No.
CR-05-00765-
GPS-01

ORDER AND
OPINION

Appeal from the United States District Court
for the Central District of California
George P. Schiavelli, District Judge, Presiding

Argued and Submitted
June 4, 2007—Pasadena, California

Filed June 4, 2008

Before: Sidney R. Thomas, Raymond C. Fisher, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Thomas

**COUNSEL**

Sean K. Kennedy, Acting Federal Public Defender, and Elizabeth A. Newman (argued), Deputy Federal Public Defender, Los Angeles, California, for the appellant.

George S. Cardona, Acting United States Attorney, Thomas P. O'Brien, Assistant United States Attorney, and Andrea L. Russi (argued), Assistant United States Attorney, Los Angeles, California, for the appellee.

**ORDER**

The panel has decided to withdraw the opinion filed November 5, 2007. The opinion is withdrawn and a substituted opinion is filed concurrently with this order.

With the filing of the substituted opinion, the panel has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc, and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed. R. App. P. 35(b).

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected. No further petitions for rehearing or rehearing en banc will be allowed.

**OPINION**

THOMAS, Circuit Judge:

In this appeal we consider, among other matters, whether the district court's imposition of a lifetime of supervised

release was reasonable and whether the district court was required to articulate findings before imposing certain special conditions of supervised release pertaining to medication. Under the circumstances presented by this case, we conclude that the term of supervised release imposed was reasonable, but that the district court should have articulated findings before imposing special conditions of release that would implicate a particularly significant liberty interest of the defendant. Therefore, we affirm in part, vacate the sentence in part, and remand for further proceedings.

I

In September of 2003, San Bernardino Sheriff's Department deputies discovered over 600 images and 20 videos of child pornography on Gordon Cope's home computers, including "videos of sadistic and masochistic acts." On March 10, 2006, Cope pled guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Cope entered his plea pursuant to a plea agreement with the government in which both parties stipulated to a total offense level of 28 under the United States Sentencing Guidelines, including numerous upward adjustments relating to the child pornography possession. The government conditionally agreed to seek the low end of the Guidelines range for incarceration, but made no agreement as to what term of supervised release it would seek. In return, Cope agreed to waive his statutory right to appeal "any sentence imposed by" the district court, provided certain requirements were met. Cope retained his right to appeal most of the special conditions of his supervised release.

Following the change of plea hearing, the probation office prepared, using the November 2002 Sentencing Guidelines, a presentence report ("PSR") recommending a total offense level of 25 and a criminal history category of II. This would ordinarily result in an advisory Guidelines range of 63 to 78 months. However, Cope's 1981 conviction for attempted sex-

ual assault on a child triggered a statutory mandatory minimum sentence of 120 months under 18 U.S.C. § 2252A(b)(2). The PSR noted that the Guidelines range for supervised release was 2-3 years, but did not mention that the Guidelines contained a policy statement recommending the statutory maximum term of supervised release for those convicted of sex offenses. U.S.S.G. § 5D1.2(c) (Nov. 2002). The statute in effect at the time of Cope's offense, like the one in effect now, provided for a lifetime term of supervised release as the statutory maximum for crimes involving possession of child pornography. 18 U.S.C. § 3583(k) (2007); 18 U.S.C. § 3583(k) (2003). In response to the PSR, the government filed a sentencing memorandum recommending that Cope receive the maximum term of supervised release in accordance with the Guidelines policy statement. Cope filed a memorandum requesting a prison sentence of less than ten years and a term of supervised release of less than life. Cope specifically objected to any special condition of supervised release of which he had not been given notice.

The district court held a sentencing hearing on July 10, 2006. After hearing from the parties, the district court sentenced Cope — 58 years old at the time of sentencing — to 120 months in prison, the statutory minimum, and a lifetime term of supervised release. The district court explained that a three-year term of supervised release was not sufficient in light of Cope's criminal history, particularly his guilty plea to attempted sexual assault on a child. Instead, the district court found that a lifetime term of supervised release was necessary based on the interest in

> the protection of society that the government has referred to . . . . [T]he nature of the offense, the type of materials that were seized; and I think that the protection of society, particularly in instances of the protection of minors from this kind of offense, is a paramount concern, obviously, to the government, also to the court.

The district court also imposed a number of special conditions of supervised release, including a condition requiring Cope to participate in sex offender treatment. As part of that treatment, the district court imposed conditions requiring Cope to submit to polygraph testing, penile plethysmograph testing, and Abel testing, and to take all prescribed medication.[1] Another condition prohibits Cope from possessing any materials "depicting and/or describing child pornography as defined in 18 United States Code section 2256, subdivision eight." Although the district court notified the parties that it was considering a special condition requiring Cope to participate in sex offender treatment, the court made no mention, prior to its announcement of the sentence, sub-conditions relating to testing or medication. This timely appeal followed.

II

We review a defendant's sentence for reasonableness, considering whether the district court accurately calculated the Guidelines range and whether the sentence is reasonable in light of the 18 U.S.C. § 3553(a) factors. *United States v. Reina-Rodriguez*, 468 F.3d 1147, 1158 (9th Cir. 2006). We review conditions of supervised release for abuse of discretion. *United States v. Williams*, 356 F.3d 1045, 1052 (9th Cir. 2004).

---

[1]As we explained in detail in *United States v. Weber*, 451 F.3d 552 (9th Cir. 2006), penile plethysmograph testing involves placing a device on a man's penis to "measure[ ] its circumference and thus the level of the subject's arousal as he is shown sexually explicit slides or listens to sexually explicit audio scenes," *id.* at 562 (internal quotation marks omitted). Plethysmograph testing has become a fairly common component of sex offender treatment programs. *Id.* Abel testing, a far less intrusive procedure, "involves exhibiting photographs to an individual and measuring the length of time he looks at each picture." *Id.* at 567. Abel testing should not be confused with "Abel's test," a mathematical method of testing for the convergence of an infinite series.

III

Cope argues it was unreasonable for the district court to sentence him to a lifetime term of supervised release. He also argues the district court did not adequately explain why the lifetime term was necessary. Before reaching the merits of this challenge, we must determine whether Cope waived his right to appeal this aspect of his sentence. *United States v. Michlin*, 34 F.3d 896, 898 (9th Cir. 1994) ("Our first task is to assess the validity of the plea agreement."). We review *de novo* the waiver of a statutory right to appeal. *United States v. Bolinger*, 940 F.2d 478, 479 (9th Cir. 1991). As long as the waiver is made voluntarily and knowingly, a defendant may waive his statutory right to appeal his sentence. *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996); *United States v. Navarro-Botello*, 912 F.2d 318, 319, 321 (9th Cir. 1990).

In reviewing a waiver of appeal, we first examine "the circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily." *Baramdyka*, 95 F.3d at 843. Cope does not contend that he entered into his plea agreement and waiver unknowing or involuntarily. Indeed, the district court conducted a full Rule 11 colloquy with the defendant during his change of plea hearing, during which the court confirmed Cope's understanding of the waiver of his right to appeal his sentence if certain conditions were met. Accordingly, we are satisfied that Cope agreed to the terms of the waiver knowingly and voluntarily. *See id.* at 844.

Next, we determine the scope of the waiver — whether the waiver precludes the defendant's appeal — based on the language used in the plea agreement. *Id.* at 843. For the most part, we interpret plea agreements " 'using the ordinary rules of contract interpretation.' " *United States v. Transfiguracion*, 442 F.3d 1222, 1228 (9th Cir. 2006) (quoting *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003)). The drafter of the plea agreement — usually the government, as was the case here —

bears responsibility for any lack of clarity, such that "[a]mbiguities are . . . construed 'in favor of the defendant,' " *id.* (quoting *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002)), and "the government is ordinarily held to the literal terms of the plea agreement it made," *id.*

Cope agreed to waive his right to appeal "any sentence imposed by the Court, and the manner in which the sentence is determined," so long as

> (a) the sentence is within the statutory maximum specified above and is constitutional, (b) the Court in determining the applicable guideline range does not depart upward in offense level or criminal history category and determines that the total offense level is 28 or below, and (c) the Court imposes a sentence: (1) within or below the range corresponding to the determined total offense level and criminal history category; or (2) at the statutory mandatory minimum.

The plea agreement also stated that a lifetime term of supervised release was the statutory maximum that could be imposed, and that the government "makes no agreement as to the term of supervised release to be imposed." The plea agreement made clear that, as an exception to the general waiver of his appellate rights, Cope retained the right to appeal some of the conditions of his supervised release.

[1] The length of Cope's term of supervised release is part of his "sentence," and is not a condition of his supervised release. *See Weber*, 451 F.3d at 559 ("We have long held that a term of supervised release is part of a defendant's sentence . . . ."); 18 U.S.C. § 3583(a) (providing that the court "may include *as a part of the sentence* a requirement that the defendant be placed on a term of supervised release") (emphasis added). Thus, the length of Cope's term of supervised release does not fall into the exception provided for appeal of certain conditions of his supervised release. Under the language of

the waiver, Cope is barred from appealing the length of his supervised release unless any one of the prerequisites stated above has not been met.

The prerequisites set forth in Cope's waiver agreement will be met, and Cope's appeal of the length of his term of supervised release is barred, if Cope's sentence is (a) within the statutory maximum and is constitutional, (b) not based on an upward departure or an offense level above 28, and (c) is either within or below the Sentencing Guidelines range corresponding to Cope's offense level and criminal history category *or* is at the statutory mandatory minimum. It is undisputed that Cope's 120-month term of incarceration meets these requirements because it is at the statutory mandatory minimum for a defendant with a prior conviction relating to sexual abuse.

[2] Accordingly, Cope's ability to appeal the length of his supervised release must be based on the nonconformity of that term of supervised release with the stated requirements. Addressing each prerequisite in turn, we conclude that a lifetime term of supervised release is within the statutory maximum for a crime involving child pornography, the range of which is "any term of years or life." 18 U.S.C. § 3583(k) (2003).[2] The second requirement is also met because the district court did not depart upward. As for the third requirement, a lifetime term of supervised release is not at the statutory mandatory minimum, which would be "any term of years." 18 U.S.C. § 3583(k) (2003). This means Cope's appeal is barred only if his lifetime term is "within or below the range corresponding to the determined total offense level and criminal history category."

[3] As drafted, however, this provision cannot sensibly be applied to a term of supervised release. Under the Sentencing

---

[2]The current version of the statute has a supervised release range of "any term of years not less than 5, or life." 18 U.S.C. § 3583(k) (2007).

Guidelines, the offense level and criminal history category do not control the term of supervised release, as they do the term of imprisonment. Rather, the *type of offense* determines the length of the Guidelines range for the term of supervised release. *See* U.S.S.G. § 5D1.2(a) (Nov. 2002) (specifying supervised release range for Class C felonies); 18 U.S.C. § 3559(a)(3) (Class C felony defined as a crime with a maximum term of imprisonment between 10 and 25 years); 18 U.S.C. § 2252A(b)(2) (2003) (maximum term for Cope's crime is 20 years). This ambiguity in the waiver provision makes it impossible for us to determine whether the prerequisites for waiver have been met with regard to Cope's term of supervised release. Because we "steadfastly" apply the rule that "any lack of clarity" in a plea agreement should be construed against the government as drafter, *Transfiguracion*, 442 F.3d at 1228 (internal quotation marks omitted), we hold that this ambiguity in the waiver provision permits Cope to appeal the length of his term of supervised release.

## IV

Having established that Cope has not waived his right to appeal his term of supervised release, we must determine whether it was reasonable for the district court to sentence Cope to a lifetime term of supervision following his eventual release from prison. The parties do not dispute that the district court accurately calculated the Guidelines range. The only issues on appeal are whether the district court adequately stated its reasons for imposing the lifetime term, 18 U.S.C. § 3553(c), and whether the lifetime term is reasonable in light of the § 3553(a) factors, *id.* § 3583(c). We answer both questions in the affirmative.

**[4]** In this case, "[t]he record makes clear that the sentencing judge listened to each argument" regarding the length of Cope's term of supervised release and "considered the supporting evidence." *Rita v. United States*, 551 U.S. ___, 2007 WL 1772146, at *13 (2007). After hearing from the parties,

the district court stated on the record that it had considered the
§ 3553(a) factors. It further stated that Cope's criminal back-
ground, including a prior conviction for attempted sexual
assault in 1981, rendered three years of supervised release insuf-
ficient.[3] Instead, the district court explained that a lifetime
term of supervised release was necessary given the need for
"protection of society, particularly in instances of the protec-
tion of minors from this kind of offense," in light of "the
nature of [Cope's] offense" and "the type of materials that
were seized." The district court also stated that it was taking
into account the fact that Cope would be around 68 upon his
release from custody, indicating that even if the court were to
sentence Cope to an actual term of years, rather than life, it
would choose a term of years that would have similar effect.
These statements meet the requirements of 18 U.S.C.
§ 3553(c) and amount to sufficient explanation, in open court,
of the reasons for imposing a lifetime term of supervised
release. As the Supreme Court has stated, "[t]he sentencing
judge should set forth enough to satisfy the appellate court
that he has considered the parties' arguments and has a rea-
soned basis for exercising his own legal decisionmaking
authority." *See Rita*, 2007 WL 1772146, at *12. We are satis-
fied with the district court's explanation.

Next, we examine whether Cope's lifetime term of super-
vised release was reasonable. The parties disagree as to
whether we should review the length of a term of supervised
release for reasonableness, the standard we use when review-
ing sentences, *Reina-Rodriguez*, 468 F.3d at 1158, or abuse of

---

[3]Cope is correct that the district court misstated some of the facts relat-
ing to his prior conviction. The district court incorrectly stated that the
1981 attempted sexual abuse involved Cope's daughter and resulted in two
felony convictions, rather than one. The record shows, however, that any
error was harmless. The district court believed a lifetime term of super-
vised release was necessary given Cope's recidivism and his longstanding
sexual interest in children. It is irrelevant, in this context, whether Cope's
prior sex offense involved his daughter or a child unrelated to him, or
whether the 1981 incident led to two felony convictions or only one.

discretion, the standard we use when reviewing conditions of supervised release, *Williams*, 356 F.3d at 1052. Because the length of a term of supervised release is not a condition of that release, but instead is part of a defendant's sentence, *see Weber*, 451 F.3d at 559; 18 U.S.C. § 3583(a), we review for reasonableness the district court's decision to sentence Cope to a lifetime term of supervised release. *See also United States v. Hayes*, 445 F.3d 536, 537 (2d Cir. 2006) (reviewing a lifetime term of supervised release for reasonableness).

**[5]** The district court's statements, discussed above, demonstrate that the lifetime term is not greater than necessary, 18 U.S.C. § 3553(a), and is reasonable in light of the nature of Cope's offense, *id.* § 3553(a)(1), his history of having a sexual interest in children as early as 1981 and as late as 2003, *id.*, and the need to protect the public once Cope leaves prison, *id.* § 3553(a)(2)(C). The lifetime term is also reasonable in light of the "pertinent policy statement," *id.* § 3553(a)(5), issued by the Sentencing Commission, which recommends the maximum term of supervised release for sex offenses, U.S.S.G. § 5D1.2(c). The Sentencing Guidelines' definition of "sex offense" includes child pornography possession. *United States v. Allison*, 447 F.3d 402, 405 (5th Cir. 2006); *United States v. Kimler*, 335 F.3d 1132, 1147 (10th Cir. 2003); 18 U.S.C. § 2252A (statute is located in Chapter 110 of title 18, which falls under the definition). Accordingly, a lifetime term of supervised release for Cope is consistent with the policy statement's recommendation. *See* 18 U.S.C. § 3583(k) (2003) (lifetime statutory maximum). Moreover, although their opinions do not necessarily render the sentence reasonable in this particular case, some of our sister circuits have held that life terms of supervised release are reasonable for those convicted of possession of child pornography. *See Hayes*, 445 F.3d at 537 (2d Cir. 2006) ("The fact that Hayes . . . already was a recidivist [ ] weakens substantially his argument that" a lifetime term was unreasonable.); *United States v. Gonzalez*, 445 F.3d 815, 820 (5th Cir. 2006) (lifetime term for possession of child pornography was reasonable); *see also*

*United States v. Moriarty*, 429 F.3d 1012, 1025 (11th Cir. 2005) (lifetime term did not violate Eighth Amendment). Therefore, under our deferential standard of review and the circumstances of this case, we uphold the district court's sentence of a lifetime term of supervised release.

V

Cope challenges certain special conditions of his supervised release on the grounds that (1) he did not receive notice of the conditions prior to the district court's announcement of the sentence, and (2) that the district court failed to make adequate findings to support the special conditions of release. The government concedes, at least in part, that these challenges have merit and that a remand is therefore required.

A

**[6]** "Where a condition of supervised release is not on the list of mandatory or discretionary conditions in the sentencing guidelines, notice is required before it is imposed, so that counsel and the defendant will have the opportunity to address personally its appropriateness." *United States v. Wise*, 391 F.3d 1027, 1033 (9th Cir. 2004). The district court has discretion as to the form and timing of the notice, and either advanced written notice or oral notice at the sentencing hearing may be sufficient, depending on the circumstances. *Id.* However, the district court will be deemed to have provided no notice when it announces the sentence and conditions of supervised release and only afterwards provides defendant's counsel an opportunity to comment. *Id.* ("It is not enough notice, however, first to impose the sentence, and then to invite counsel to comment, at least where counsel objects as occurred here. That is no notice at all.").

**[7]** The government concedes a remand is necessary because the district court failed to provide Cope and his counsel with notice of the special conditions requiring Cope, as

part of his sex offender treatment program, to take all pre-
scribed medications and to submit to plethysmograph, poly-
graph, and Abel testing. Because these conditions of
supervised release are not contemplated by the Sentencing
Guidelines,[4] the district court was required to provide notice
before imposing them. Although the district court notified
Cope that it would likely impose a sex offender treatment
condition, the court gave no indication the treatment condition
would involve the possibility of forced medication or plethys-
mograph, polygraph, and Abel testing. Cope's attorney duly
objected to these conditions after the district court read the
sentence. Accordingly, we must vacate Cope's sentence and
remand to the district court to permit the parties to address
whether these special conditions of supervised release are
appropriate. *See Wise*, 391 F.3d at 1033-34.

B

Cope argues that a remand is also necessary because the
district court did not provide a thorough discussion, on the
record, of why it was necessary to impose special conditions
of supervised release requiring Cope to submit to penile
plethysmograph testing and to "take all prescribed medica-
tion." In *United States v. Williams*, we recognized that a con-
dition of supervised release "compelling a person to take
antipsychotic medication is an especially grave infringement
of liberty," such that the usual rule that a district court need

---

[4]The Guidelines do list (1) the mandatory condition that a defendant
convicted of a sexual offense must report his residential address to his pro-
bation officer and register as a sex offender, U.S.S.G. § 5D1.3(a)(7) (Nov.
2002), and (2) the recommended special condition that a defendant con-
victed of a sexual offense must participate in a sexual offender treatment
program, *id.* § 5D1.3(d)(7). The Guidelines are silent, however, as to any
of the testing or medication requirements the district court included as part
of Cope's treatment program. This case is therefore distinguishable from
*United States v. Lopez*, where we noted that the Guidelines specifically
contemplated participation in a mental health program. 258 F.3d 1053,
1055-56 (9th Cir. 2001).

not articulate its reasons for imposing supervised release conditions does not apply. 356 F.3d at 1055. Instead, where forced antipsychotic medication is concerned, "a thorough inquiry is required before a court" may include it as a condition of supervised release. *Id.* This inquiry requires the district court to "make an explicit finding on the record that the condition 'involves no greater deprivation of liberty than is reasonably necessary.'" *Id.* at 1057 (quoting 18 U.S.C. § 3583(d)(2)). In addition, the parties must develop "medically-informed records," *id.* at 1056, to permit the district court to make "on-the-record, medically-grounded findings that court-ordered medication is necessary to accomplish one or more of the factors listed in § 3583(d)(1)," *id.* at 1057. Those factors include the nature of the crime, the history and characteristics of the defendant, and the need to encourage deterrence, protect the public, and provide the defendant with rehabilitative services. 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C) & (a)(2)(D).

In *Weber*, we extended the *Williams* rule to conditions requiring those on supervised release to submit to penile plethysmograph testing as part of their sex offender treatment. 451 F.3d at 568-69. We explained that whenever a condition "implicates a particularly significant liberty interest of the defendant," the district court must articulate, based on evidence in the record, why the condition "is necessary to accomplish one or more of the factors listed in § 3583(d)(1) and involves no greater deprivation of liberty than is reasonably necessary." *Id.* at 561 (quoting *Williams*, 356 F.3d at 1057) (internal quotation marks omitted). When making these heightened findings in the context of plethysmograph testing specifically, the district court must consider whether the testing is sufficiently likely to yield useful results "given a defendant's specific characteristics," despite the known flaws and intrusiveness of plethysmograph testing, as well as explain why the many less-intrusive alternatives to plethysmograph testing are not adequate. *Id.* at 567-68; *see also id.* at 569 (reiterating the need for evidence about the particular charac-

teristics and circumstances of the defendant). We also clarified that the government bears the burden of demonstrating why the condition meets the requirements of 18 U.S.C. § 3583(d)(1)-(2). *Id.* at 558.

Here, the government correctly concedes that we must remand this case back to the district court because it did not articulate, on the record, the necessary *Weber* findings with regard to the condition requiring Cope to submit to plethysmograph testing. The government contends, however, that the heightened requirements of *Williams* and *Weber* do not apply to the condition requiring Cope to "take all prescribed medication." It is true that *Williams* addressed only antipsychotic medication, rather than a condition pertaining to forced medication of any kind. Antipsychotic medication, as the *Williams* court pointed out, has received a great deal of attention from this court and the Supreme Court as a particularly intrusive category of drug that alters mental processes, affects behavior and demeanor, and "interferes with a person's self-autonomy," in addition to subjecting patients to serious side effects. *Williams*, 356 F.3d at 1053-55; *see also Riggins v. Nevada*, 504 U.S. 127 (1992); *Washington v. Harper*, 494 U.S. 210 (1990); *Kulas v. Valdez*, 159 F.3d 453 (9th Cir. 1998). That said, we must read *Williams* in conjunction with *Weber*, where we expanded the *Williams* requirements to plethysmograph testing and suggested that a district court should make the heightened *Williams* findings before imposing any condition that "implicates a particularly significant liberty interest of the defendant." *Weber*, 451 F.3d at 561.

**[8]** There is nothing in *Williams* and *Weber* that would suggest that the holdings were limited to the treatments at issue. To the contrary, both decisions imply that the requirement of special findings applies to any imposed treatment or medication that implicates a particularly significant liberty interest. Accordingly, where, as here, a district court orders a defendant to take "any" or "all" medication prescribed by medical or other treatment personnel during his term of supervised

release without making heightened *Williams* findings, this all-encompassing medication condition must necessarily be understood as limited to those medications that do not implicate a particularly significant liberty interest of the defendant. If the government wishes to impose upon a defendant a condition relating to a particular medication likely to infringe upon significant liberty interests, it must bring the issue to the attention of the district court, where it bears the burden of demonstrating why the specific medication condition "is necessary to accomplish one or more of the factors listed in § 3583(d)(1) and involves no greater deprivation of liberty than is reasonably necessary." *Weber*, 451 F.3d at 561 (internal quotation marks omitted). After the parties have developed the necessary "medically-informed records," *Williams*, 356 F.3d at 1056, the district court must make "on-the-record, medically-grounded findings that court-ordered medication is necessary to accomplish one or more of the factors listed in § 3583(d)(1)," *id.* at 1057, and "that the condition 'involves no greater deprivation of liberty than is reasonably necessary,' " *id.* (quoting 18 U.S.C. § 3583(d)(2)).[5]

---

[5]In this context of sexual offender treatment, there are at least two examples of medication that would implicate particularly significant liberty interests such that the district court must make the necessary *Williams* and *Weber* findings before Cope may be required to take them as part of his treatment. The first, as we have already held, is any antipsychotic medication. *Williams*, 356 F.3d at 1054-57. Cope also raises the possibility that he could be ordered to undergo so-called "chemical castration," the taking of hormonal drugs to reduce his sex drive and cause temporary impotence. We have no doubt that chemical castration would, if prescribed against the will of a defendant on supervised release, implicate a particularly significant liberty interest. Like antipsychotic medication, chemical castration interferes with mental processes and alters behavior. *See*, *e.g.*, *People v. Gauntlett*, 352 N.W.2d 310, 314-16 (Mich. Ct. App. 1984); John F. Stinneford, *Incapacitation Through Maiming: Chemical Castration, the Eighth Amendment, and the Denial of Human Dignity*, 3 St. Thomas L.J. 559 (2006). It may also cause serious side effects, such as cancer and depression. *Gauntlett*, 352 N.W.2d at 315; *Physician's Desk Reference* 2624 (61st ed., 2007) (discussing Depo-Provera, a hormonal drug used for chemical castration). As a result, chemical castration is certainly as intru-

**[9]** Given these considerations, we remand this case to the district court to make findings on the record in accordance with *Weber*, 451 F.3d at 567-69, before imposing the plethysmograph testing condition. We also remand to permit the district court to make the necessary *Williams* and *Weber* findings with regard to the condition requiring Cope to "take all prescribed medication," insofar as that condition may require Cope to take medication that implicates a particularly significant liberty interest.

## VI

Cope also attacks the medication condition on the ground that it infringes his procedural due process rights and is overbroad. Under normal circumstances, a district court is not required to "articulate on the record at sentencing the reasons for imposing each condition." *United States v. Rearden*, 349 F.3d 608, 619 (9th Cir. 2003); *see also Williams*, 356 F.3d at 1055. Cope's due process argument is foreclosed by *Williams* and *Weber*, which require additional process only when a forced medication condition "implicates a particularly significant liberty interest." *Weber*, 451 F.3d at 561. The remand in light of *Williams* and *Weber*, discussed above, will provide Cope with all the process he is due.

**[10]** We agree with Cope, however, that the requirement

---

sive as antipsychotic medication or penile plethysmograph testing. *See Weber*, 451 F.3d at 561-64; *Williams*, 356 F.3d at 1054. In fact, chemical castration may be found at the extreme end of the spectrum of intrusive medications and procedures, and there may well be other conditions of supervised release that qualify for *Williams* and *Weber* findings without reaching that level of intrusion. We do not doubt that there will be other types of medication or procedures designed to rehabilitate or deter, either extant or not yet in existence, which, if forced upon a defendant as a condition of supervised release, would implicate particularly significant liberty interests. *Cf., e.g.*, Anthony Burgess, *A Clockwork Orange* (W. W. Norton & Co. 1962).

that he "shall take all prescribed medication" is overbroad insofar as it is not clearly limited to medications that are reasonably related to sex offender treatment. Congress has stated that special conditions of supervised release must be "reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)." 18 U.S.C. § 3583(d)(1). Those factors are "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1), "the need . . . to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B), "the need . . . to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C), and "the need . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id.* § 3553(a)(2)(D). Each of these factors points primarily to the underlying sex offense committed by Cope and the resulting need for treatment and deterrence. In accordance with the congressional intent, any medication Cope is required to take as a condition of his supervised release must be reasonably related to his treatment as a sex offender. Indeed, were the rule otherwise, a person on supervised release could arguably violate the terms of his release by neglecting to take prescribed cold medications. Therefore, we hold that any medication condition that the district court imposes on remand must be limited to medications reasonably related to Cope's treatment as a sex offender.[6]

## VII

[11] Cope also argues that the sex offender treatment condition requiring him to submit to plethysmograph, Abel, and polygraph testing, as well as to inpatient treatment, is over-

---

[6]Because the parties do not raise it, we do not reach the question whether the medication condition, in permitting treatment personnel and the probation officer to determine which medications Cope will be required to take, is an improper delegation of authority. *See United States v. Stephens*, 424 F.3d 876, 880-82 & n.2 (9th Cir. 2005).

broad. Cope cites no authority for this proposition, and we hold that the district court did not abuse its broad discretion in setting these conditions of supervised release. *Williams*, 356 F.3d at 1052; *United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir. 1998). The district court's order requiring comprehensive sex offender treatment is reasonably related to Cope's history as a recidivist sex offender, 18 U.S.C. § 3553(a)(1), the need to protect the public from potential future sex crimes, *id.* § 3553(a)(2)(C), the need to deter Cope from committing such crimes, *id.* § 3553(a)(2)(B), and Cope's need for correctional treatment, *id.* § 3553(a)(2)(D). *See* 18 U.S.C. § 3583(d)(1). In addition, the condition does not involve a greater deprivation of liberty than is reasonably necessary for these purposes, *id.* § 3583(d)(2),[7] and is not contrary to any policy statements issued by the Sentencing Commission, *id.* § 3583(d)(3); *see United States v. Fellows*, 157 F.3d 1197, 1203-04 (9th Cir. 1998) (rejecting an overbreadth challenge to aspects of a supervised release condition relating to sex offender treatment).

## VIII

Finally, we address whether the special condition of Cope's supervised release prohibiting him from possessing "any materials . . . depicting and/or describing child pornography" is overbroad. Cope contends this condition is overbroad because it exposes him to incarceration for possession of otherwise protected materials "describing" child pornography, such as statutes, caselaw, and Cope's own writings as part of his sex offender treatment. Cope did not object to this condition below, so we review for plain error. *United States v.*

---

[7]We, of course, leave open the question whether the plethysmograph testing requirement is reasonably related to the appropriate § 3553(a) factors and "involves no greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d)(1)-(2). As discussed above, the district court must make this determination on the record in accordance with *Weber*, 451 F.3d at 561, 567-70.

*Olano*, 507 U.S. 725, 731-36 (1993). In order for us to reverse the district court under this standard of review, we must find "an 'error' that is 'plain' and that 'affects substantial rights.' " *United States v. Minore*, 292 F.3d 1109, 1117 (9th Cir. 2002) (quoting *Olano*, 507 U.S. at 732). "If those requirements are met, we will exercise our discretion to correct the error only if it 'seriously affects the fairness, integrity or public reputation of judicial proceedings.' " *Id.* (quoting *Olano*, 507 U.S. at 732). The condition constitutes plain error for two reasons.

**[12]** First, the condition straightforwardly applies to Cope's own presentence report, as well as copies of statutes and cases that Cope might need were he to bring a collateral challenge to an aspect of his sentence once he is released from prison. *See*, *e.g.*, 18 U.S.C. § 2252A(a)(3)(B) (defining child pornography); *Rearden*, 349 F.3d at 612, 615 (describing particular images of child pornography). The government effectively acknowledges that the condition could interfere with Cope's ability to bring a collateral attack by suggesting "that the panel consider adding language to make it clear that defendant can review legal materials in the possession of his lawyer or probation officer." Resp. to Pet. for Reh'g 6-7. While we agree that an amendment to the condition would cure this particular problem, it is the district court that must alter the conditions of a defendant's supervised release. *See United States v. Miller*, 205 F.3d 1098 (9th Cir. 2000); 18 U.S.C. § 3583(e). If a condition is to be amended, we must order the district court to do so on remand. However, the government's suggested amendment is insufficient to protect Cope's right to prepare a collateral attack. Cope is indigent and has no statutory or constitutional right to counsel on collateral attack; thus, requiring him to obtain counsel, or even the assistance of his probation officer, in order to formulate a collateral attack is unduly restrictive. Therefore, we direct the district court on remand to amend this condition to clarify that Cope may possess materials necessary to a collateral attack for the purposes of preparing a collateral attack.

**[13]** The second error in the condition is that because it bars Cope from possessing "writings . . . describing child pornography," it would, by its plain language, apply to journal-writing or the writing of a "sexual autobiography," *see United States v. Antelope*, 395 F.3d 1128, 1135 (9th Cir. 2005), that may be required elements of Cope's sex offender treatment. We cannot, as the government urges, assume this condition will be construed so as not to put Cope to the choice of violating it and violating another condition of his supervised release, such as the requirement that he "abide by all rules, requirements, and conditions of" a sex offender treatment program. "We review the language of the condition as it is written and cannot assume, as the government seems to suggest," that it will be interpreted contrary to its plain language. *United States v. Sales*, 476 F.3d 732, 737 (9th Cir. 2007). Accordingly, we also direct the district court on remand to amend the condition to clarify that Cope may keep journals or participate in the writing of a "sexual autobiography," if required by his sex offender treatment.

If so amended, this condition of Cope's supervised release will readily pass constitutional muster. We have already rejected an overbreadth challenge to a similar condition prohibiting a defendant from possessing "any materials depicting sexually explicit conduct as defined by 18 U.S.C. § 2256(2)." *Rearden*, 349 F.3d at 619. We upheld the restriction because "[a] defendant's right to free speech may be abridged to effectively address [his] sexual deviance problem," *id.* (internal quotation marks omitted) (second alteration in original), and because the restriction furthered the goals of rehabilitation and protecting the public, *id.* at 620. Given Cope's long history of sexual attraction to children, the same reasoning applies here. However, the condition may not interfere with Cope's ability to formulate a collateral attack if he so chooses, nor may the condition create a conflict with other conditions of his supervised release. Cope "cannot be left to guess about the intended meaning of the terms of his supervised release." *Sales*, 476 F.3d at 737.

IX

In conclusion, although we uphold the district court's sentence of a lifetime term of supervised release, we vacate the sentence and remand to permit the district court: (1) to provide notice to the parties of any special condition of supervised release not contemplated by the Sentencing Guidelines; (2) to articulate specific, medically informed findings on the record regarding the need for Cope to undergo plethysmograph testing and take medications that implicate particularly significant liberty interests; (3) to clarify that any condition requiring Cope to take all prescribed medications is limited to those medications reasonably related to sex offender treatment; and (4) to clarify that the condition prohibiting Cope from possessing materials describing child pornography does not apply to materials necessary to, and used for, a collateral attack, or to materials prepared or used for the purposes of his court-mandated sex offender treatment.

**AFFIRMED IN PART; REVERSED IN PART; SENTENCE VACATED AND REMANDED.**