**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

HARRY JOHN DANIELS,
            *Defendant-Appellant.*

No. 07-50242

D.C. No.
CR-06-00096-SGL

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen G. Larson, District Judge, Presiding

Argued and Submitted
March 6, 2008—Pasadena, California

Filed August 29, 2008

Before: J. Clifford Wallace, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Wallace

11985

## COUNSEL

Sean K. Kennedy, Federal Public Defender, and Kathryn A. Young, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Thomas P. O'Brien, United States Attorney, Christine C. Ewell and Joseph N. Akrotirianakis, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

## OPINION

WALLACE, Circuit Judge:

Daniels appeals from the sentence he received after pleading guilty to possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). He challenges the length and several conditions of his lifetime term of supervised release. We affirm in part, and vacate and remand in part.

I

In August 2004, special agents of the Federal Bureau of Investigation (FBI) were investigating the distribution of child pornography over the internet through online chat groups. After identifying a group whose members traded child pornography over the internet, the FBI traced the online identity of one group member to Daniels in Upland, California. In September 2004, the FBI executed a federal search warrant for Daniels' Upland residence. Daniels made two statements to the FBI in which he admitted that he was a member of the subject group, that he participated in the group in a female persona, that on several occasions he had downloaded child pornography from the internet and uploaded child pornography to the internet, and that he had child pornography saved on his computer hard drive and on computer diskettes in his home.

FBI agents seized a computer, 223 diskettes, three compact discs, three videotapes, and eleven file folders of documents belonging to Daniels. A search of these media revealed thousands of images and videos of child pornography, and exam-

iners at the National Center for Missing and Exploited Children determined that these thousands of images included 659 images depicting identified victims of child sexual abuse.

In exchange for Daniels' agreement to plead guilty to a single-count information alleging possession of child pornography and to waive certain appellate rights, the government agreed not to prosecute Daniels for violations of 18 U.S.C. § 2252A(a)(1)-(4) or (6) which would have charged him with receipt, distribution, reproduction, advertisement, promotion, solicitation, or sale of child pornography, or possession with intent to sell child pornography. The plea agreement stated that the maximum sentence included ten years of imprisonment and a lifetime period of supervised release. As part of the plea agreement, Daniels consented to several conditions of supervised release related to the use of computers and the internet. The district court accepted the plea agreement.

The Probation Office filed its Presentence Report (PSR) on Daniels and recommended a lifetime term of supervised release, observed that the lifetime term was warranted by applicable statutory provisions, and recommended incarceration within the sentencing guidelines. The PSR reasoned that Daniels' interest in child pornography over a number of years, his desire to protect his illegal pornographic images, and "an unknown clinical risk assessment of his behavior" all supported the imposition of the lifetime term. The government's sentencing memorandum agreed with the Probation Office's recommendations and with the justification for the recommendations.

Daniels objected to the lifetime term and certain special conditions of supervised release, arguing that they were unreasonable and that they did not comport with the governing statutory requirements. In response, the Probation Office reiterated that a lifetime term of supervised release was necessary:

> Because the defendant has carefully controlled the type of information provided to the Court as to his psychological condition and orientation, a lifetime term of supervised [release] is necessary for protection of the community, as a truly independent risk assessment has not been conducted. Perhaps even more compelling is that such a term is needed to meet the goal of ensuring adequate rehabilitative treatment. The issues underlying sex offenses are typically deeply ingrained and require life long management. Should the defendant be able to demonstrate to the Court during the term of supervised release that all the underlying clinical truths as to his condition have been identified and ameliorated, the defendant can apply for an early termination of his supervised release.

Most of the argument at the sentencing hearing related to the term of imprisonment. The lifetime term of supervised release and special conditions of release were not brought up by either party. The district court ultimately imposed a 51-month sentence of imprisonment, below the low-end of the advisory Guidelines range. Although Daniels' opening brief challenged his term of imprisonment as unreasonable, he withdrew that argument in his reply brief. The district court also imposed a lifetime term of supervised release with several special conditions, including those to which Daniels had consented in the plea agreement and others for which he had not waived appellate rights. Daniels timely appealed, challenging the length of his term of supervised release as well as several of its special conditions.

## II

We first address Daniels' challenges to the district court's imposition of a lifetime term of supervised release. The length of Daniels' term of supervised release is part of his sentence and is reviewed for reasonableness. *See United States v. Cope*,

527 F.3d 944, 950 (9th Cir. 2008). "On appeal, we first consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).

**[1]** Daniels argues that the lifetime term must be reversed because the district court failed to explain its reasons for its imposition in violation of 18 U.S.C. § 3553(c), which provides that "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence." Failure to explain adequately the sentence selected can be procedural error. *See Carty*, 520 F.3d at 993. The Supreme Court has explained that section 3553(c) requires a sentencing court to "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007). "What constitutes a sufficient explanation will necessarily vary depending upon the complexity of the particular case, whether the sentence chosen is inside or outside the Guidelines, and the strength and seriousness of the proffered reasons for imposing a sentence that differs from the Guidelines range. A within-Guidelines sentence ordinarily needs little explanation. . . ." *Carty*, 520 F.3d at 992. No lengthy explanation is necessary if "the record makes clear that the sentencing judge considered the evidence and arguments." *Rita*, 127 S. Ct. at 2469.

It is true, as Daniels argues, that the sentencing court did not expressly state its reasons for imposing the lifetime term of supervised release during the sentencing hearing. The sentencing hearing simply did not focus on the term of supervised release and focused instead on the term of imprisonment. Neither party brought it up, although Daniels was given ample opportunity to do so when both he and his counsel were asked if they had anything to add to the discussion. Despite the district court's silence on the specific issue of the term of supervised release, however, we are satisfied

that the record shows that the court considered the arguments and evidence that Daniels had submitted and chose to reject those arguments and impose the Guidelines-recommended lifetime term of supervised release.

[2] The PSR and the government's sentencing memorandum both discussed the reasons for recommending a lifetime term of supervised release, and Daniels challenged that recommendation in his own sentencing memorandum. At the opening of the sentencing hearing, the judge stated,

> The court has also received [the PSR], as well as the recommendations of the probation officer and the pre-sentence investigation report. I've received the government's initial position, the defendant's position regarding sentencing factors, and then the government's response to the defendant's sentencing memorandum on the defendant's position. I've read all of the exhibits; the report from the treating therapists and doctors; the letters, Mr. Daniels' letters; and the various other information that you submitted concerning sentencing issues and placement issues.

From this record, it is clear that the sentencing court was aware of Daniels' objection to the recommended term of supervised release and had considered Daniels' arguments and evidence before making its decision. *See Carty*, 520 F.3d at 996 (reasoning that when a sentencing judge "stated that he reviewed the papers" and "the papers discussed the applicability of § 3553(a) factors," we can assume that the judge considered the relevant factors). Certainly the district court could have said more to explain its decision, as did the district court in *Cope*, 527 F.3d at 951-52, but such a lengthy explanation is not always necessary. Indeed, as we recently stated in *Carty*, "[a]n explanation communicates that the parties' arguments have been heard, and that a reasoned decision has been made. It is most helpful for this to come from the bench, but adequate explanation in some cases may also be inferred from

the PSR or the record as a whole." 520 F.3d at 992. Here, the PSR and record as a whole communicate that the district court heard and rejected Daniels' arguments. Furthermore, the district court expressly stated that its sentence was based upon consideration of the sentencing factors enumerated in 18 U.S.C. § 3553(a). The district court did not commit procedural error.

**[3]** Daniels also argues that the lifetime term of supervised release is substantively unreasonable because it improperly restricts Daniels' First Amendment rights and because it involves a greater deprivation of liberty than is necessary to meet the goals of supervised release. Substantive reasonableness is reviewed "in light of all the 18 U.S.C. § 3553(a) [sentencing] factors, including the applicable Guidelines range." *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006). While we have not adopted a presumption of reasonableness for a within-Guidelines sentence, we "abide by the Supreme Court's admonition that 'when the judge's discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable.' " *Carty*, 520 F.3d at 994 (*quoting Rita*, 127 S. Ct. at 2465).

**[4]** 18 U.S.C. § 3583(k) authorizes a term of supervised release of "not less than 5 [years], or life" for offenses involving a minor victim, including possession of child pornography in violation of 18 U.S.C. § 2252A. The Sentencing Guidelines also provide that "the length of the term of supervised release shall not be less than the minimum term of years specified for the offense . . . and may be up to life, if the offense is a sex offense." U.S.S.G. § 5D1.2(b)(2). An accompanying policy statement recommends the maximum term of supervised release for a sex offense. *See id.* Application Note 1 to section 5D1.2 defines possession of child pornography as a sex offense.

**[5]** The Probation Office recommended a lifetime term of supervised release in part based on this policy statement,

which reflects the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public. *See* H.R. Rep. 107-807, 2003 WL 131168 (discussing lifetime supervised release for sexual offenders). This policy recommendation was a factor in our decision to uphold a lifetime term of supervised release in *Cope*, 527 F.3d at 952: "[t]he lifetime term is also reasonable in light of the 'pertinent policy statement' issued by the Sentencing Commission, which recommends the maximum term of supervised release for sex offenses" (internal citations omitted). The recommendation was also based on Daniels' "stated interest in child pornography over a number of years; his strong desire to protect the child pornography images . . . ; and an unknown clinical risk assessment." Additionally, the Probation Office pointed out the importance of a lifetime term of supervised release in rehabilitating Daniels because "[t]he issues underlying sex offenses are typically deeply ingrained and require life long management."

**[6]** Daniels does not question that the lifetime term is reasonably related to his offense of conviction or to his background, but argues that because he "had never posed a threat to anyone," the deprivation of liberty involved is greater than necessary to protect the public and prevent recidivism. Although, unlike the defendant in *Cope*, Daniels has no prior sex offense convictions, the district court was not obligated to accept his assertion that he "never posed a threat to anyone," or to rely on a report he submitted that the Probation Office found was "based almost exclusively on [Daniels'] self-interested self-reporting." *See United States v. Rearden*, 349 F.3d 608, 620 (9th Cir. 2003) ("Although [defendant] testified that his sexual interest in children was strictly fantasy . . . , the district court was entitled not to accept his version of the facts"). The Probation Office was concerned that "a truly independent risk assessment" was never conducted on Daniels because he "carefully controlled the type of information provided to the Court," and both the Probation Office and the

court were concerned that Daniels "lack[ed] . . . insight into his problems." The court was also concerned about Daniels' "addictive behavior," which contributed significantly to his offense conduct.

[7] Additionally, as the district court reminded Daniels at sentencing, merely possessing child pornography is not a victimless crime; it fuels the demand for the creation and distribution of child pornography. The government presented evidence of the harm that children suffer when they are used in the creation of child pornography and when that pornography is distributed to others. A lifetime term of supervised release was warranted in order to ensure that Daniels does not relapse into his addictive behavior and again begin collecting child pornography. The district court was within its discretion to conclude that a lifetime term of supervised release was necessary to punish Daniels for his crime, to rehabilitate him, and to protect the public from future crimes by Daniels.

Daniels' constitutional argument focuses on the fact that several conditions of supervised release restrict his access to computers and the internet which, if imposed for an entire lifetime, he argues, improperly restrict his First Amendment rights. However, as he admits, Daniels agreed to those conditions in his plea agreement. Contrary to Daniels' assertion, the plea agreement expressly informed him that the district court could impose a sentence up to a lifetime of supervised release. At his change of plea hearing, Daniels was again reminded that he could receive a lifetime term of supervised release, and he stated that he understood the maximum penalties to which he was subject. As Daniels expressly agreed to the conditions knowing that a lifetime term of supervised release might be imposed, he has waived his right to challenge them. His First Amendment argument is therefore meritless.

III

[8] Daniels next challenges a number of the conditions of supervised release imposed by the district court. We review

the district court's decision to impose conditions of supervised release for an abuse of discretion. *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006). In applying this standard of review, "we give considerable deference to a district court's determination of the appropriate supervised release conditions," recognizing that "a district court has at its disposal all of the evidence, its own impressions of a defendant, and wide latitude." *Id.* (internal quotation marks omitted). District courts may impose conditions of supervised release "if they are reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender, and involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release." *Rearden*, 349 F.3d at 618 (internal quotation marks omitted); *see also* 18 U.S.C. § 3583(d). "Circuit law establishes that a sentencing judge is not required to articulate on the record at sentencing the reasons for imposing each condition of supervised release, where we can determine from the record whether the court abused its discretion." *United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007) (internal quotation marks and footnote omitted). However, to impose a condition that implicates a significant liberty interest, the district court must support its decision on the record with evidence justifying the condition. *United States v. Williams*, 356 F.3d 1045, 1055-57 (9th Cir. 2004).

A.

Condition six of Daniels' supervised release states that he "shall participate in a psychological/psychiatric counseling and/or a sex offender treatment program, which may include inpatient treatment as approved and directed by the treatment provider. [Daniels] shall abide by all rules, requirements, and conditions of such program, including submission to risk assessment evaluation(s) and physiological testing, and shall take all medication deemed by the treatment provider to be necessary for rehabilitative purposes." Daniels raises several objections to this condition.

**[9]** First, he points out that although the written judgment requires Daniels to submit to *physiological* testing, the transcript of the sentencing hearing states only that he must submit to *psychological* testing. The difference between physiological and psychological testing is significant because physiological testing contemplates Abel and polygraph testing, which are not otherwise specified in Daniels' conditions of supervised release. *Compare United States v. Stoterau*, 524 F.3d 988, 1003 n.6 (9th Cir. 2008) (observing that the difference between "psychological" and "physiological" in that case was immaterial because the conditions expressly specified that the defendant would have to submit to polygraph and Abel testing). Daniels argues that this court must therefore amend the written judgment to delete the condition requiring physiological testing, because "[w]hen there is a discrepancy between an unambiguous oral pronouncement of a sentence and the written judgment, the oral pronouncement controls." *United States v. Fifield*, 432 F.3d 1056, 1059 n.3 (9th Cir. 2005).

**[10]** Here, the source of the discrepancy between the written judgment and the transcript of oral proceedings is unclear. Daniels asserts that the court actually stated "psychological testing" during the hearing and that the condition must therefore be revised to conform with the oral pronouncement, but the government contends that discrepancy is a result of a mistranscription by the court reporter. The government's position seems plausible, given that the district court appears to have been reading the special terms of supervised release directly from the Probation Officer's letter recommending physiological testing. Because we cannot determine with certainty the condition that was actually imposed at the sentencing hearing and because the difference is significant insofar as physiological testing contemplates Abel and polygraph testing whereas psychological testing may not, we vacate this condition and remand it to the district court. The district court can make any change necessary so that the written judgment is in conformity with the oral judgment, if the court remembers what that

judgment was. If not, the court may hold a new hearing on that condition.

Second, Daniels argues that because the condition requiring him to submit to physiological testing contemplates Abel and polygraph testing, it is invalid because the district court did not apply heightened scrutiny before imposing the condition and because the condition involves a greater deprivation of liberty than is reasonably necessary for the purposes of supervised release. Daniels also asserts that polygraph testing violates his Sixth Amendment rights, but he fails to assert this position with any meaningful argument, so this objection to the condition is waived. *See* Fed. R. App. P. 28(a)(9); *Ghahremani v. Gonzales*, 498 F.3d 993, 997 (9th Cir. 2007). Finally, he argues that insofar as the condition contemplates polygraph testing, it violates his Fifth Amendment rights.

**[11]** These arguments are not new to us. In *Stoterau*, we held that polygraph testing as a condition of supervised release does not infringe on a defendant's Fifth Amendment rights because defendants retain such rights during polygraph examinations. 524 F.3d at 1003-04; *see also Weber*, 451 F.3d at 568 n.17; *United States v. Antelope*, 395 F.3d 1128, 1134-41 (9th Cir. 2005). We have also rejected Daniels' argument that polygraph conditions present constitutional concerns under *Miranda v. Arizona*, 384 U.S. 436 (1966), and have held that polygraph examinations pursuant to a condition of supervised release do not constitute "custodial interrogation" and do not therefore implicate *Miranda*. *See Stoterau*, 524 F.3d at 1004.

**[12]** We have similarly held against the challenges Daniels raises to Abel testing: "Abel testing does not implicate a particularly significant liberty interest, and thus does not require the district court to make the heightened findings" Daniels requests. *Id.* at 1006. We also disagreed that Abel testing is unreliable, holding that a "district court could reasonably conclude that the Abel test has value in rehabilitation and protec-

tion of the public as part of a treatment program for assessing a sex offender's interest in children." *Id.* at 1007. Therefore, here, as in *Stoterau*, we hold that the district court did not abuse its discretion in imposing a condition of supervised release that may require Daniels to submit to Abel and polygraph testing.

**[13]** Third, and finally, Daniels objects to the supervised release condition that he "take all prescribed medication." In *Cope*, which was decided after Daniels was sentenced, we held that certain medications such as anti-psychotic medications implicate significant liberty interests and that to impose a condition requiring a defendant to take those types of medications, a district court must make " 'on-the-record, medically-grounded findings that court-ordered medication is necessary to accomplish one or more of the factors listed in § 3583(d)(1).' " 527 F.3d at 954 (*quoting Williams*, 356 F.3d at 1057). We stated that "where, as here, a district court orders a defendant to take 'any' or 'all' medication prescribed by medical or other treatment personnel during his term of supervised release without making heightened *Williams* findings," the condition must "be understood as limited to those medications that do not implicate a particularly significant liberty interest of the defendant." *Cope*, 527 F.3d at 955. We remanded "to permit the district court to make the necessary . . . findings with regard to the condition requiring [defendant] to 'take all prescribed medication.' " *Id.* at 956. The district court did not have the benefit of *Cope* when it sentenced Daniels, and therefore we remand this condition to the district court so that it can make necessary findings with respect to the requirement that Daniels take all prescribed medication.

In sum, although we reject Daniels' challenges to Condition six insofar as he objects its potential to submit him to Abel and polygraph testing, we order a limited remand of this condition so that the district court can either conform the written judgment to the oral pronouncement or hold a new hearing to decide whether "psychological" or "physiological" testing

will be imposed. We also remand so that an appropriate record can be developed for the phrase mandating that Daniels take all prescribed medication. If no such record is developed, the condition will be construed to be limited to medications that do not implicate Daniels' significant liberty interests.

## B.

**[14]** Condition seven provides that, "As directed by the Probation Officer, the defendant shall pay all or part of the costs of the defendant's sex offender treatment or psychiatric disorder. . . ." Daniels argues it is improper for a district court to delegate to the Probation Officer such a responsibility; however, he recognizes that this argument, which he failed to raise in the district court, is foreclosed by *United States v. Dupas*, 419 F.3d 916, 922-24 (9th Cir. 2005). *See also Stoterau*, 524 F.3d at 1007-08 (holding the district court did not plainly err when it delegated to the probation officer the power to direct the defendant to pay some or all of the costs of treatment). The district court did not plainly err when it imposed this condition.

## C.

Condition eight prohibits Daniels from "possess[ing] any materials, including pictures, photographs, books, writings, drawings, videos, or video games, depicting and/or describing 'sexually explicit conduct' as defined in 18 U.S.C. § 2256(2)." Daniels objects to this condition, arguing that it involves a greater deprivation of liberty than is reasonably necessary, because Daniels was convicted only of simple possession of child pornography, and that it violates the First Amendment because the condition would apply to legal adult pornography and even perhaps non-pornographic media with sexual content. Daniels did not object to this condition in the district court, and so we review for plain error. *See United States v. Ortiz*, 362 F.3d 1274, 1278 (9th Cir. 2004).

**[15]** We approved a substantially similar condition in *Rearden*, where we held that the district court did not plainly err in imposing the condition that the defendant "not possess any materials depicting sexually explicit conduct as defined in 18 U.S.C. § 2256(2)." 349 F.3d at 619. We reasoned that "[a] defendant's right to free speech may be abridged to 'effectively address [his] sexual deviance problem,' " *id.* (citations omitted) (alteration in original), even where the defendant was convicted only of transmission of child pornography and not of child molestation. *Id.* at 620. We have also held that the phrase "sexually explicit conduct" is neither vague nor overbroad. *See id.*; *see also United States v. X-Citement Video, Inc.*, 982 F.2d 1285, 1288-89 (9th Cir. 1992) (holding that definition of "sexually explicit conduct" set forth in prior version of 18 U.S.C. § 2256(2) survived vagueness and overbreadth challenges), *rev'd on other grounds*, 513 U.S. 64 (1994).

**[16]** Daniels acknowledges that we upheld a similar condition in *Rearden*, but argues that his case is distinguishable from *Rearden* because there the defendant was involved with a co-defendant who was "a dangerous pedophile" and had an "interest in extremely vile and graphic depictions of child rape and murder." *Rearden*, 349 F.3d at 620. However, we hold that any distinction between the defendant in *Rearden* and Daniels does not make the district court's ruling plainly erroneous. Neither defendant had a history of child molestation. The defendant in *Rearden* had an admitted interest in depictions of child rape and murder; Daniels' child pornography collection included a number of "sadomasochistic images of prepubescent children" and over 600 images depicting identified victims of child sexual abuse. Also, although pursuant to his plea agreement, Daniels was charged only with possession of child pornography, he had admitted to uploading child pornography onto the internet and participating in chatrooms discussing sexual activity with children. Finally, we observe, as the district court continually reminded Daniels during his sentencing hearing, that the possession of child

pornography itself facilitates the abuse of children by fueling the demand for its production and distribution. Even if Daniels does not pose a risk of sexually abusing children, he may slip into old habits of amassing child pornography. In these circumstances and based on the nature of Daniels' offense, the district court "did not plainly err in limiting [Daniels'] possession of materials depicting sexually explicit conduct because the condition furthered the goals of rehabilitating him and protecting the public." *Id.*; *see also United States v. Bee*, 162 F.3d 1232, 1235 (9th Cir. 1998) (upholding similar condition for a convicted sex abuser in order to promote rehabilitation and protection of the public).

### D.

Condition ten prohibits Daniels from "frequent[ing], or loiter[ing], within 100 feet of school yards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, or other places primarily used by persons under the age of 18." Condition fourteen restricts his choice of housing, stating that Daniels "shall not reside within direct view of" such places. Daniels argues that because the government has submitted "absolutely no evidence that Daniels has ever been any danger to a minor," these conditions are not reasonably related to his offense of conviction or his personal background.

**[17]** Daniels did not object to this condition in the district court, so we review for plain error. *See Ortiz*, 362 F.3d at 1278. We approved a similar condition on plain error review in *Rearden*, 349 F.3d at 620. It is true that there the government presented evidence "from which the district court could conclude that [the defendant] posed a risk to children." *Id.* The defendant there also had an admitted life-long sexual interest in children, "used news stories about child murders or abductions to become sexually excited," and had written and "described in graphic detail the rape, abuse, and murder of children." *Id.* Here, by contrast, Daniels maintains that he has

no sexual interest in children but instead collected child pornography only so that he would have a comprehensive collection of pornography generally. However, the district court was not required to believe Daniels' self-serving statements, particularly where the Probation Office stated that no "independent risk assessment" had been conducted. Moreover, there was evidence before the district court suggesting that Daniels did have a sexual interest in children, whether or not he had acted on that interest. Besides the sheer volume of child pornography that Daniels had collected, organized, stored, and distributed, Daniels had written emails about having engaged in a sexually deviant lifestyle that included sex with children. Even if Daniels was not actually a pedophile and had not actually engaged in sexual acts with children, such evidence suggested that he at least had a sexual interest in children and that preventing his loitering around or living near areas where children frequent was reasonably related to his offense of conviction and to the goals of rehabilitating Daniels and protecting the public from his potential sexual interest in children. As we recognized in *Bee*, which upheld similar restrictions on loitering for a convicted sex abuser, "even very broad conditions are reasonable if they are intended to promote the probationer's rehabilitation and to protect the public." 162 F.3d at 1236. The conditions here were so intended and there was no plain error.

E.

Conditions eleven and twelve provide that, without prior approval of the Probation Office, Daniels shall not be employed by a business or organization "that causes him to regularly contact persons under the age of 18," or "whose principal product is the production and/or selling of materials depicting and/or describing 'sexually explicit conduct,' as defined at 18 U.S.C. § 2256(2)." Daniels, for the first time on appeal, challenges these restrictions as "improper occupational restrictions."

**[18]** We approved almost identically-worded conditions in *Stoterau*. 524 F.3d at 1009-10. In interpreting U.S.S.G. § 5F1.5, which requires heightened scrutiny of certain occupational restrictions, we held "that the provision applies only to restrictions on the specific occupation or occupations held by the defendant prior to conviction." *Id.* Here, neither condition restricts Daniels from engaging in his previous occupation as an insurance salesperson, and so neither condition is an "occupational restriction" under section 5F1.5. Thus, Daniels' arguments with regard to U.S.S.G § 5F1.5 lack persuasiveness, and the conditions here only have to meet the requirements of 18 U.S.C. § 3583(d). We hold, on plain error review, that they do. The restrictions on Daniels' future employment are reasonably related to the goals of deterrence, rehabilitation, and protection of the public, given his potential sexual interest in children. Furthermore, the restrictions are not a "greater deprivation than is reasonably necessary" to further these goals, because Daniels is not precluded from resuming his work as an insurance salesperson. *See Stoterau*, 524 F.3d at 1010.

## F.

**[19]** Finally, Daniels objects to the court's authorization for the Probation Officer to disclose the PSR and any previous mental evaluations or reports to the treatment provider, and for the treatment provider to provide information to state or local service agencies for rehabilitative purposes. Daniels contends this authorization violates the psychotherapist-patient privilege recognized in *Jaffee v. Redmond*, 518 U.S. 1 (1996). Daniels' argument is foreclosed by *United States v. Lopez*, where we recognized that the psychotherapist-patient evidentiary privilege is "beside the point of a supervised release condition." 258 F.3d 1053, 1057 (9th Cir. 2001); *see also Stoterau*, 524 F.3d at 1011 (holding the district court did not abuse its discretion in authorizing the limited disclosure of the defendant's PSR and mental health records). Here, "[t]he district court could reasonably conclude that the limited

disclosure of [Daniels'] PSR and mental health evaluations was necessary to facilitate his treatment and successfully monitor his reintegration into society following his release from prison." *Stoterau*, 524 F.3d at 1011.

IV

For the above reasons, we AFFIRM the district court's sentence of a lifetime term of supervised release. We AFFIRM the special conditions of release, with the exception of condition six. We VACATE and REMAND condition six to the district court for a determination of whether the condition requires Daniels to submit to psychological or physiological testing, and to make specific findings concerning the medications that Daniels may be required to take.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**