FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

NOV 17 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10070 |
| Plaintiff-Appellee, | D.C. No. 1:19-cr-00107-HG-1 |
| v. | |
| JERRE NISHIDA, | OPINION |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Helen W. Gillmor, District Judge, Presiding

Argued and Submitted February 16, 2022
Honolulu, Hawaii

Before: Michael Daly Hawkins, Ryan D. Nelson, and Danielle J. Forrest, Circuit
Judges.

Opinion by Judge Forrest;
Dissent by Judge R. Nelson

# SUMMARY[*]

## Criminal Law

The panel vacated two special conditions of supervised release and remanded for resentencing so that the district court can clarify the scope of authority delegated to the probation officer.

The special conditions charge the probation officer, in consultation with the treatment provider, with supervising the defendant's participation in mental-health and substance-abuse treatment programs, including the duration and intensity of the programs. The defendant argued on appeal that the treatment conditions are unlawful because they purport to delegate to the probation officer authority to determine her punishment, which is a function reserved exclusively for the court.

The defendant did not contest that she knowingly and voluntarily waived her "right to assert any and all legally waivable claims," and the panel rejected the defendant's argument that the district court's statements about her ability to appeal vitiated her appeal waiver. The panel noted that when a defendant with an otherwise valid appeal waiver challenges the legality of her sentence, the claim as to waiver rises and falls with the claim on the merits. The panel reviewed for plain error whether the treatment conditions, which the defendant did not challenge in the district court, are illegal.

Rejecting the defendant's argument that the condition allows the probation officer to impose an indefinite term of treatment, the panel concluded that the defendant's sentence facially confines her treatment conditions to her five-year term of supervised release and does not impermissibly delegate to the probation officer the power to determine a length of punishment by the term set by the court. The panel then addressed the defendant's argument that the district court improperly delegated authority over the "nature and extent" of her punishment by giving the probation officer discretion to determine whether she must participate in inpatient or outpatient treatment. The panel wrote that whether a defendant must participate in inpatient treatment is a determination of the nature or extent of the punishment,

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

which cannot be delegated to a nonjudicial officer. And that while the record is not definitive regarding the district court's intent, the words that it used give the probation officer (in consultation with the treatment provider) discretion to require inpatient or outpatient treatment. Thus, the district court committed plain error affecting the defendant's substantial rights because she must comply with the conditions or face revocation of her supervised release. The panel therefore vacated the substance-abuse and mental-health treatment conditions and remanded for resentencing so that the district court can clarify the scope of authority delegated to the probation officer consistent with this opinion.

Dissenting, Judge R. Nelson wrote that the conditions only allow the probation officer to supervise–not assign–the defendant's treatment; they do not give the probation officer impermissible discretion to order inpatient or outpatient treatment. He wrote that even if the treatment conditions were ambiguous, such ambiguity cannot constitute plain error.

---

## COUNSEL

---

Georgia McMillen (argued), Law Office of Georgia K. McMillen, Wailuka Maui, Hawaii, for Defendant-Appellant.

Michael Nammar (argued), Assistant United States Attorney; Marion Percel, Chief of Appeals; Judith A. Philips, Acting United States Attorney, District of Hawaii; Office of the United States Attorney, Honolulu, Hawaii; for Plaintiff-Appellee.

FORREST, Circuit Judge:

Defendant-Appellant Jerre Nishida contends that the district court impermissibly delegated to a nonjudicial officer the authority to "decide the nature or extent of" her punishment by giving her probation officer discretion to require inpatient treatment as part of her supervised release. *United States v. Esparza*, 552 F.3d 1088, 1091 (9th Cir. 2009) (quoting *United States v. Stephens*, 424 F.3d 876, 881 (9th Cir. 2005)). Two special conditions of Nishida's supervised release charge the probation officer, in consultation with the treatment provider, with supervising Nishida's participation in mental-health and substance-abuse treatment programs, including the duration and intensity of the treatment programs. Because the plain language of Nishida's two treatment conditions give the probation officer authority to require inpatient treatment, we vacate these conditions and remand for resentencing so the district court can clarify the scope of authority delegated to the probation officer consistent with this opinion.[1]

## I. BACKGROUND

Nishida has chronic drug, alcohol, and mental-health problems. In May 2019, after her probation officer recovered more than 80 grams of pure methamphetamine

---

[1]We address Nishida's remaining claims concerning her sentence calculation, her Sixth Amendment right to counsel, and her financial-disclosure condition of supervised release in a separate memorandum disposition filed concurrently with this opinion.

from her vehicle, Nishida was arrested and indicted on one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C § 841(a)(1) and 841(b)(1)(A). Nishida entered a plea agreement in which the Government agreed not to file a special information under 21 U.S.C. § 851, which would have resulted in a 15-year mandatory minimum sentence. For her part, Nishida waived her right to appeal: (1) "any sentence within the Guidelines range as determined by the Court at the time of sentencing"; (2) "the manner in which the sentence . . . was determined, on any ground whatsoever"; and (3) "the right to assert any and all legally waivable claims."

Several months after entering the plea agreement, Nishida replaced her appointed counsel with a privately retained attorney, Earle Partington. By the time of her sentencing, however, Partington had been disbarred in California and this court had imposed reciprocal disciplinary action that precluded him from practicing before us. The Hawaii Supreme Court had also suspended Partington's Hawaii law license effective within a month of Nishida's sentencing hearing. Partington's admission to practice in the United States District Court for the District of Hawaii remained valid, but that court had issued an order to show cause as to whether Partington should be allowed to continue to practice before it.

Because of these disciplinary issues, the district court continued Nishida's sentencing proceeding to allow her to speak with Partington. The court also

3

appointed counsel under the Criminal Justice Act (CJA) to meet with Nishida and answer any questions that she had about Partington's status. The district court explained to Nishida that it was "trying to make sure that if there are any questions in your mind about how you want to proceed, that you are given an opportunity to take time to consider how you want to proceed." At a subsequent hearing, Nishida decided to proceed with her CJA counsel.

Thereafter, the district court sentenced Nishida to 120 months' imprisonment followed by five years of supervised release. As part of her supervised release, the district court imposed special conditions requiring Nishida to participate in substance-abuse treatment (Condition 1) and mental-health treatment (Condition 4). Both treatment conditions stated that the "probation officer, in consultation with the treatment provider, will supervise [Nishida's] participation in the program (such as provider, location, modality, duration, and intensity)." Nishida did not challenge these conditions in the district court.

## II. DISCUSSION

Nishida argues on appeal that the treatment conditions imposed as part of her supervised release are unlawful because they purport to delegate to the probation officer authority to determine her punishment, which is a function reserved exclusively for the court. However, because Nishida waived her right to appeal her

4

sentence, we must first determine whether we can consider her challenge to her supervised release conditions.

Nishida does not contest that she knowingly and voluntarily waived her "right to assert any and all legally waivable claims." Nonetheless, she makes two arguments for why her appeal waiver does not bar us from considering her challenge to her supervised release conditions. First, she argues that the district court vitiated her appeal waiver by unequivocally advising her that she could appeal her sentence. And second, she argues that waiver does not apply because her substance-abuse and mental-health treatment conditions are illegal. We address both arguments.

## A. Did the District Court Vitiate Nishida's Appeal Waiver?

A knowing and voluntary waiver of appellate rights in a plea agreement bars review of any claims within its scope. *United States v. Lo*, 839 F.3d 777, 785 (9th Cir. 2016). It is well established that waiver of the right to appeal a sentence encompasses conditions of supervised release imposed as part of the sentence. *See United States v. Joyce*, 357 F.3d 921, 924–25 (9th Cir. 2004); *see also United States v. Weber*, 451 F.3d 552, 559 (9th Cir. 2006) ("We have long held that a term of supervised release is part of a defendant's sentence."). However, the district court undermines an otherwise valid appellate waiver if the "judge advises a defendant, *without qualification*, that . . . she has a right to appeal." *United States v. Watson*, 582 F.3d 974, 987 (9th Cir. 2009) (citation omitted). We review whether the district

5

court has vitiated a valid appeal waiver de novo. *United States v. Dailey*, 941 F.3d 1183, 1188 (9th Cir. 2019).

A district court's comments overcome an otherwise valid appeal waiver only if they are "unambiguous" and "without qualification." *United States v. Arias-Espinosa*, 704 F.3d 616, 619 (9th Cir. 2012) (citations omitted). Thus, we have distinguished between clear, unequivocal statements that contradict waiver, such as "you have the right to appeal findings which I make today regarding sentencing," *United States v. Buchanan*, 59 F.3d 914, 917 (9th Cir. 1995), and equivocal statements that do not directly conflict with waiver, such as "you may have a right to appeal the sentence," *Arias-Espinosa*, 704 F.3d at 618. Only the former type of statements invalidates a valid waiver. In analyzing the continued efficacy of a defendant's appeal waiver, we focus both on "the court's statement[s] and the defendant's reasonable expectations about h[er] rights." *Id.*

Here, although the district court discussed the possibility of an appeal with Nishida, it did not unambiguously advise her that she continued to have a right to appeal. *See id.* at 619. In explaining how Partington's inability to practice in the Ninth Circuit would affect his ability to represent Nishida were she to appeal, the district court stated that Nishida had "given up most of [her] rights to appeal" but that it "d[id] not intend to have [Partington's disbarment] interfere with [Nishida's] proceeding." When Nishida asked whether retaining new counsel meant she was

6

"waiving an appeal," the judge responded: "No. As it stands right now, you have waived some of your rights to appeal your sentence in your plea agreement." And at the subsequent hearing when Nishida chose to proceed with CJA counsel, the district court reiterated that Nishida had "waived in [her] plea agreement . . . the right to appeal, except in certain circumstances," and that "Partington would not be able . . . to take that appeal because he is disbarred" even if "there were such circumstances."

On this record, the district court's statements about Nishida's ability to appeal not only expressly acknowledge, but are also couched within the limits of, her appeal waiver. As such, they are distinguishable from those statements that we have held vitiate an otherwise valid appeal waiver, and we reject Nishida's argument to the contrary.

### B.    Are Nishida's Treatment Conditions Illegal?

Next, Nishida contends that waiver does not apply because her supervised release conditions requiring that she participate in substance-abuse and mental-health treatment unlawfully delegate to a nonjudicial officer the authority to "decide the nature or extent of" her punishment by giving the probation officer discretion over the duration and intensity of her treatment. *Esparza*, 552 F.3d at 1091 (citation omitted). Nishida is correct that under our precedent an appeal waiver "does not bar a defendant from challenging an illegal sentence." *Watson*, 582 F.3d at 977. When a defendant with an otherwise valid appeal waiver challenges the legality of her

sentence, the "claim as to waiver rises and falls with [the] claim on the merits."

*Dailey*, 941 F.3d at 1188.

In analyzing the legality of a supervised release condition, "[w]e review the language of the condition as it is written and cannot assume . . . that it will be interpreted contrary to its plain language." *United States v. Cope*, 527 F.3d 944, 958 (9th Cir. 2008) (internal quotation marks and citation omitted). Although we typically review de novo whether a challenged "supervised release condition illegally exceeds the permissible statutory penalty or violates the Constitution," *United States v. Wells*, 29 F.4th 580, 583 (9th Cir. 2022) (citation omitted), we review for plain error when a party fails to raise its illegality argument to the district court,[2] *id.* at 592 (citation omitted); *see also Cope*, 527 F.3d at 957–58 (stating that

---

[2]Although the parties agree that plain error review applies, our caselaw on what standard of review applies in this context is not the epitome of clarity. *See, e.g.*, *Dailey*, 941 F.3d at 1187–88 (reviewing "de novo whether a supervised release condition illegally exceeds the permissible statutory penalty or violates the Constitution" even though the defendant did not object to the condition below) (internal quotation marks, alteration, and citation omitted); *see also Cope*, 527 F.3d at 957–58 (stating that the standard of review for an overbreadth challenge to a condition of supervised release was plain error, and concluding the condition at issue "constitute[d] plain error," without finding that it affected the defendant's substantial rights or the fairness, integrity, or public reputation of judicial proceedings). Because the decision in *United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007), "puts judges in the awkward position of reaching the merits of an appellant's constitutional claims before deciding whether the appeal should be dismissed on waiver grounds," if a defendant fails to raise her constitutional challenge to the district court, then we must first review that question for plain error before deciding, ostensibly de novo, whether waiver applies. *Wells*, 29 F.4th at 595 (Bea, J., dissenting) (discussing *Bibler*, 495

8

the standard of review for a condition of supervised release challenged as overbroad for the first time on appeal was plain error). "Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights. If these three conditions are met, we may exercise our discretion to notice an error that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Bautista*, 989 F.3d 698, 701–02 (9th Cir. 2021) (internal quotation marks and citations omitted).

Where the district court determines "*whether* a defendant must abide by a condition, and *how* . . . a defendant will be subjected to the condition, it is permissible to delegate to the probation officer the details of where and when the condition will be satisfied." *Wells*, 29 F.4th at 592 (quoting *Stephens*, 424 F.3d at 880) (emphasis added). However, there is an "important limitation" on any such delegation of authority: a nonjudicial officer "may not decide the nature or extent of the punishment imposed upon a probationer . . . since under our constitutional system the right to . . . impose the punishment provided by law is judicial." *Stephens*, 424 F.3d at 881 (internal quotation marks, alterations, and citations omitted).

---

F.3d 621). Arguably, we could apply our exception to plain error review for a "question that is purely one of law and where the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *United States. v. Torres*, 828 F.3d 1113, 1123 (internal quotation marks and citation omitted); *but see United States v. Yijun Zhou*, 838 F.3d 1007, 1014 (9th Cir. 2016) (Graber, J., concurring) (writing "separately to question the validity of our case law with respect to the standard of review applicable to arguments raised for the first time on appeal by criminal defendants"). But because Nishida contends that plain error review applies, which is supported by *Wells*, we apply this standard.

**1.	Duration**

Under 21 U.S.C. § 841(b)(1)(A) and the United States Sentencing Guidelines, the district court sentenced Nishida to five years of supervised release, during which time she is required to comply with the conditions of her release. In requiring Nishida to participate in substance-abuse and mental-health treatment, the district court gave "[t]he probation officer, in consultation with the treatment provider," the authority to supervise the "duration" of her treatment. Nishida argues that this language allows the probation officer to impose an indefinite term of treatment. We disagree.

The district court expressly limited Nishida's term of supervised release to five years. The conditions of her supervised release govern what she must do *during that term*, and by virtue of being conditions of supervised release, they cease to apply when the term of supervision expires. *See* 18 U.S.C. § 3601 ("A person . . . placed on supervised release . . . shall, *during the term imposed*, be supervised by a probation officer to the degree warranted by the conditions specified by the sentencing court." (emphasis added)). Stated another way, the probation officer's authority is necessarily cabined in by the defined duration of supervision. *See United States v. Ortega*, 19 F.4th 831, 834 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1460 (2022) (affirming a condition of supervised release that gave the probation officer discretion over the length of the defendant's inpatient treatment "within a particularized eight-month window," where the maximum duration of the condition

10

was the expiration of the one-year term of supervised release). A person who is no longer under supervision is not subject to the authority of the supervisor. *See* 18 U.S.C. § 3601. The probation office can determine whether Nishida should participate in treatment for one year or three years, for example, but it cannot require her to continue with treatment beyond the term of supervised release ordered by the court. Therefore, we conclude that Nishida's sentence facially confines her treatment conditions to her five-year term of supervised release and does not impermissibly delegate to the probation officer the power to determine a length of punishment beyond the term set by the court.

## 2.    Intensity

Nishida also argues that the district court improperly delegated authority over the "nature and extent" of her punishment by giving the probation officer discretion to determine whether she must participate in inpatient or outpatient treatment. We have previously held that a condition requiring a defendant to participate in "psychological/psychiatric counseling and/or a sex offender treatment program, which may include inpatient treatment" was an improper delegation because it gave the probation officer discretion to determine whether to require inpatient or outpatient treatment. *Esparza*, 552 F.3d at 1089, 1091. As we explained, "confinement to a mental health facility is far more restrictive than having to attend therapy sessions, even daily." *Id.* at 1091. Thus, whether a defendant must

11

participate in inpatient treatment is a determination of "the nature or extent of the punishment," which cannot be delegated to a nonjudicial officer. *Id.* (quoting *Stephens*, 424 F.3d at 881).

As several of our sister circuits have recognized, these same liberty concerns are present in relation to all inpatient treatment, whatever the ailment. *See United States v. Martinez*, 987 F.3d 432, 435–36 (5th Cir. 2021) ("The decision to place a defendant in inpatient treatment cannot be characterized as one of the managerial details that may be entrusted to probation officers."); *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015) ("There is no dispute that, in the context of supervised release at least, inpatient drug treatment programs are sufficiently more restrictive than outpatient programs that the difference between the two programs might be said to be the difference between liberty and the loss of liberty"); *United States v. Mike*, 632 F.3d 686, 696, 699 (10th Cir. 2011) (establishing "that a district court cannot delegate the decision of whether to subject a defendant to residential treatment" and concluding that the district court erred when it gave the probation officer discretion to require residential mental-health or substance-abuse treatment).

Here, Nishida's treatment conditions direct the probation officer, after consulting with the provider, to supervise Nishida's treatment, including the "provider, location, modality, duration, and intensity." Plainly, the breadth of the probation officer's discretion, in consultation with the treatment provider, could

include choosing inpatient or outpatient treatment. Both mental-health and substance-abuse treatment can be provided in a variety of settings—including inpatient, residential, and outpatient—depending on the severity of a patient's condition and the patient's needs. *See* Substance Abuse & Mental Health Servs. Admin., HHS Pub. No. SMA-19-5097, *Principles of Community-based Behavioral Health Services for Justice-involved Individuals: A Research-based Guide* at 19–20 (2019); Nat'l Inst. on Drug Abuse, *Principles of Drug Addiction Treatment* at 23–25 (3d ed. 2018). When used in reference to treatment programs, "location, modality, . . . and intensity" encompasses the full range of programs, from periodic outpatient visits to full-time involuntary care. Therefore, this language implicates "the nature or extent of the punishment." *Esparza*, 552 F.3d at 1091 (quoting *Stephens*, 424 F.3d at 881).

However, it is not clear that the district court intended to give the probation officer such broad discretion to require Nishida to attend inpatient treatment. The district court did not make any reference to inpatient or outpatient treatment. And the treatment conditions it imposed directed the probation officer to "supervise" the treatment programs, not to "approve" or "direct" them. *Cf. Esparza*, 552 F.3d at 1089 (approve and direct); *Stephens*, 424 F.3d at 882 (direct); *Matta*, 777 F.3d at 121 (approve); *Mike*, 632 F.3d at 690 (direct and approve). To "supervise" means to "[t]o oversee or direct *the execution of* . . . ; to have charge of or responsibility for . . . ; to

13

preside over; to superintend." *Supervise, v.*, *OED Online*, Oxford Univ. Press, https://www.oed.com/view/Entry/194556 (last visited June 21, 2022) (emphasis added). This suggests authority over *implementation* of treatment, but not necessarily selection of the treatment program. *Cf. approve, v.1*, *OED Online*, Oxford Univ. Press, https://www.oed.com/view/Entry/9889 (last visited June 21, 2022) ("[t]o confirm authoritatively" or "to sanction"); *direct, v.*, *OED Online*, Oxford Univ. Press, https://www.oed.com/view/Entry/53294 (last visited June 21, 2022) ("[t]o keep in right order; to regulate, control, govern the actions of").

But this begs the question—if the probation officer does not have the authority to select the type of treatment that Nishida must complete, who does? The district court gave no indication that it was retaining this authority. And if it was intended that the treatment professional would decide whether inpatient or outpatient treatment would be required, the same improper-delegation problem would exist. *Stephens*, 424 F.3d at 881 ("[T]he right to . . . impose the punishment provided by law is judicial." (citation omitted)).

While the record is not definitive regarding the district court's intent, the words that it used give the probation officer (in consultation with the treatment provider) discretion to require inpatient or outpatient treatment.[3] Thus, the district

---

[3]In an unpublished decision, a unanimous panel of this court recently reached this same conclusion construing the exact same language at issue here. *United States v. Scates*, No. 20-10427, 2021 WL 4938110, at *1 (9th Cir. Oct. 22, 2021).

court committed plain error affecting Nishida's substantial rights because she must comply with the conditions or face revocation of her supervised release. *See* 18 U.S.C. § 3583(e)(3), Fed. R. Crim. P. 32.1; *see also United States v. Pruden*, 398 F.3d 241, 251 (3d Cir. 2005) ("A plainly erroneous condition of supervised release will inevitably affect substantial rights, as a defendant who fails to meet that condition will be subject to further incarceration."). "Similarly, imposing a sentence not authorized by law seriously affects the fairness, integrity, and reputation of the proceedings." *Pruden*, 398 F.3d at 251 (internal quotation marks and citations omitted); *see also United States v. Schopp*, 938 F.3d 1053, 1069 (9th Cir. 2019) ("[I]t is a miscarriage of justice to give a person an illegal sentence." (citation omitted)).

The Government urges us to construe Nishida's treatment conditions narrowly to avoid this conclusion. The Government concedes that the plain language "is broad enough . . . to encompass inpatient treatment," but it argues that because the district court did not expressly state that the probation officer may require inpatient treatment, this case is distinguishable from *Esparza* and the conditions should not be read to delegate judicial power. The cases that the Government cites in support of its proposed narrow construction are unpersuasive.

In *Cope*, the defendant challenged as overbroad and a violation of due process

a special condition of supervised release that he "take all prescribed medication."[4] 527 F.3d at 956. We agreed that the broad language of this challenged condition encompassed both medications unrelated to the defendant's treatment as a sex offender and medications that implicate a significant liberty interest. *Id.* at 955–56. Therefore, we remanded to the district court with instructions to limit the condition to medications reasonably related to the defendant's treatment and to make "on-the-record, medically-grounded findings" necessary for the condition to include "medication that implicates a particularly significant liberty interest." *Id* (citation omitted).

In addition, we vacated as overbroad a condition prohibiting the defendant from possessing material describing child pornography. *Id.* at 958. Because the condition could be read to include the defendant's pre-sentence report and potential writing assignments for sex-offender treatment, we remanded for the district court "to clarify that the condition . . . does not apply to materials necessary to, and used for, a collateral attack, or to materials prepared or used for the purposes of his court-mandated sex offender treatment." *Id.* In doing so, we rejected the Government's argument that we could "assume th[e] condition will be construed so as not to put [the defendant] to the choice of violating it and violating another condition of his

---

[4]Notably, the decision in *Cope* did not reach the question of whether the medication condition "[wa]s an improper delegation of authority" because the parties did not raise the issue. 527 F.3d at 956 n.6.

supervised release" by not fully participating in his sex offender treatment. *Id.*

Shortly after our decision in *Cope*, we vacated and remanded a sentence with a similar condition requiring the defendant to "take all prescribed medication" in *United States v. Daniels*, 541 F.3d 915, 926 (9th Cir. 2008). Because the district court sentenced the defendant in *Daniels* prior to our decision in *Cope*, we remanded so that the district court could "make necessary findings with respect to the [medication] requirement." *Id.* Although we noted that if the appropriate medical record were not developed "the condition w[ould] be construed to be limited to medications that do not implicate [the defendant's] significant liberty interests," we explicitly instructed the district court "to make specific findings *concerning the medications that [the defendant] may be required* to take." *Id.* at 926, 929 (emphasis added).

Neither *Cope* nor *Daniels* stands for the proposition that we should construe a supervised release condition "contrary to its plain language" to avoid an impermissible delegation of judicial power. *Cope*, 527 F.3d at 958. These cases involved arguments that the challenged conditions imposed a "greater deprivation of liberty than is reasonably necessary" to meet the purposes of supervised release set out in 18 U.S.C. §§ 3553 and 3583. *Id.* at 954–55; *see also Daniels*, 541 F.3d at 924, 926. And in both cases, we remanded for the district court to make the necessary findings or craft appropriate limitations to correct the overbroad conditions. *Cope*,

527 F.3d at 958; *Daniels*, 541 F.3d at 929. We did not narrowly construe the conditions to resolve the defendants' facial overbreadth challenge.

The Government's reliance on the Tenth Circuit's decision in *United States v. Mike* is also unpersuasive. In *Mike*, the defendant challenged a standard sex-offender treatment condition that required him to "begin participating in sex offender treatment," as well as other special conditions requiring that he participate in mental-health and substance-abuse treatment. 632 F.3d at 690. The Tenth Circuit adopted our "approach of focusing on the liberty interest implicated when determining whether a particular delegation is infirm" and found that courts cannot delegate the decision of whether a defendant must undergo inpatient treatment to the probation officer. *Id.* at 695 (discussing *Esparza*).

Because the defendant's mental-health and substance-abuse treatment conditions "expressly left the decision of whether the program[s] would be residential to the probation officer," the Tenth Circuit found that the district court erred by imposing them.[5] *Id.* at 699–700. On the other hand, it noted that the language of the sex-offender condition was "open-ended" and did not "explicitly state that the probation officer ha[d] the discretion to force [the defendant] to

[5]Applying plain error review, the Tenth Circuit did not vacate and remand the mental-health and substance-abuse treatment conditions because before *Mike* the Tenth Circuit had not held it was improper to delegate the choice of imposing inpatient treatment to a nonjudicial officer and unpublished opinions from other circuits came to the opposite conclusion. 632 F.3d at 699.

participate in residential treatment." *Id.* at 696. And it construed the sex-offender treatment condition "as not delegating to the probation officer the authority to decide whether to subject [the defendant] to inpatient treatment." *Id.* Although the Tenth Circuit cited *Daniels* to support its narrow construction of the sex-offender treatment condition, it actually extended our holding in that case because, as discussed above, in *Daniels* we concluded that the medication condition could not stand as written because the district court had not made necessary findings. We did not construe the condition narrowly to avoid the defendant's overbreadth challenge, nor did we find that the district court expressly delegated unlawful authority. *See Daniels*, 541 F.3d at 929.[6]

Here, Nishida argues that by expressly giving the probation officer discretion over the "location, modality, . . . and intensity" of her treatment, the district court gave the probation officer discretion to confine her to an inpatient facility. As discussed above, and as the Government concedes, this is the plain meaning of Nishida's treatment conditions. *Cf. Cope*, 527 F.3d at 958. Although a district court

---

[6]In addition, the Tenth Circuit expressly rejected our approach to the overbroad condition in *Cope* related to the possession of materials describing child pornography. *See Mike*, 632 F.3d at 701. The defendant in *Mike* relied on *Cope* to argue that a similar condition prohibited him from possessing a copy of his presentence report and potentially from fully participating in sex-offender treatment. *Id.* Finding "the Ninth Circuit's approach for interpreting release conditions to be overly technical," the Tenth Circuit held that the child-pornography condition did not encompass the presentence report or treatment-related writings. *Id.*

need not enumerate all unauthorized aspects of a treatment program when "delegating the administrative details of arranging the program to [a] probation officer," a condition that plainly read delegates to a nonjudicial officer the power to decide the "nature or extent of the punishment" cannot stand in our constitutional system. *Stephens*, 424 F.3d at 881–82.

Accordingly, we vacate Nishida's substance-abuse (Condition 1) and mental-health (Condition 4) treatment conditions and remand for resentencing so that the district court can clarify the scope of authority delegated to the probation officer consistent with this opinion.

**VACATED in part and REMANDED for resentencing.**



R. NELSON, Circuit Judge, dissenting:

I join Sections II.A and II.B.1 of the majority's opinion. I dissent from Section II.B.2. Contrary to the majority's holding, Nishida's supervised release conditions 1 and 4 only allow the probation officer to supervise–not assign–Nishida's treatment. The conditions do not give the probation officer impermissible discretion to order inpatient or outpatient treatment. Even if the treatment conditions were ambiguous, such ambiguity cannot constitute plain error. Instead, we should read any ambiguity in favor of a constitutional reading or remand for clarification. The majority's holding diverges from our approach to plain-error review of sentencing conditions. And it conflicts with the Tenth Circuit's reasoning concerning a similar condition. *See United States v. Mike*, 632 F.3d 686, 696 (10th Cir. 2011). Indeed, the majority's holding furthers tension among the circuits. Because the district court did not plainly err, I would affirm.

I

The parties agree that plain-error review applies here. The threshold for plain error is high: "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Bautista*, 989 F.3d 698, 701–02 (9th Cir. 2021) (internal quotation marks and citation omitted). Only "[i]f these three conditions are met," may we "exercise our discretion to notice an error that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 702 (internal quotation marks

and citation omitted).  Put differently, plain error is what is "so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir. 1997) (citing *United States v. Frady*, 456 U.S. 152, 163 (1982)).  The district court did not plainly err.

A

We have held that an improper delegation of sentencing conditions to nonjudicial officers implicates substantial rights.  *See United States v. Esparza*, 552 F.3d 1088, 1089, 1091 (9th Cir. 2009) (per curiam).  An important limitation on any such delegation is that a nonjudicial officer "may not decide the nature or extent of the punishment imposed upon a probationer."  *United States v. Stephens*, 424 F.3d 876, 881 (9th Cir. 2005) (quotation omitted).  The disagreement here is whether the supervised release conditions allowing the probation officer to "supervise" Nishida's treatment constitute plain error.  I would hold that it does not.

Nishida's supervised release conditions read:

> No. 1: You must participate in a substance abuse treatment program and follow the rules and regulations of that program.  The probation officer, in consultation with the treatment provider, will supervise your participation in the program, such as provider, location, modality, duration, and intensity.

> No. 4: You must participate in a mental health treatment program and follow the rules and regulations of that program.  The probation officer, in consultation with the treatment provider, will supervise your participation in the program, such as provider, location, modality, duration, and intensity.

2

In the majority's view, allowing the probation officer, "in consultation with the treatment provider," to "supervise [Nishida's] participation in the program, such as provider, location, modality, duration, and intensity," impermissibly delegates authority to the probation officer to order specific treatment. The majority admits, however, that "supervise" "suggests authority over *implementation* of treatment, but not necessarily selection of the treatment program." Maj. at 14. This is exactly right. Given that interpretation, there is no error "clear-cut" and "obvious." *Turman*, 122 F.3d at 1170.

Indeed, the definitions of "supervise" and "order" are different. To "supervise" means to "observe and direct the execution of," New Oxford American Dictionary (3d ed. 2010), or "having authority over others; a manager or overseer," *Supervisor*, *Black's Law Dictionary* (11th ed. 2019). But to "order" is to "give an authoritative direction or instruction to do something," New Oxford American Dictionary (3d ed. 2010), or give a "command, direction, or instruction." *Order*, *Black's Law Dictionary* (11th ed. 2019). Various words, such as order, direct, or require, would perhaps be an unconstitutional delegation. "Supervise" is not one of those words.

And to the extent ambiguity exists, we have suggested, and other courts have agreed, that ambiguous sentencing conditions should be construed in favor of a constitutional reading. In *United States v. Cope,* we determined that a supervised

3

release condition requiring the defendant to take "any or all" medication "must necessarily be understood as limited to those medications that do not implicate a particularly significant liberty interest." 527 F.3d 944, 955 (9th Cir. 2008). This standard was echoed in *United States v. Daniels*, where we remanded the condition to the district court to apply *Cope*. 541 F.3d 915, 926 (9th Cir. 2008). There, we said that if the record on remand is not developed, "the condition will be construed to be limited to medications that do not implicate Daniels' significant liberty interests." *Id*. The Tenth Circuit then adopted this reasoning in *Mike*: when "reviewing challenges to non-specific, all-encompassing conditions like the one here, [we] have opted to construe them in a manner that does not make them infirm." 632 F.3d at 696 (citing *Daniels*, 541 F.3d at 926).

The majority counters that "[n]either *Cope* nor *Daniels* stand for the proposition that we should construe a supervised release condition 'contrary to its plain language' to avoid an impermissible delegation of judicial power." Maj. at 17–18 (citing *Cope*, 527 F.3d at 958). True. But Nishida's supervised release conditions do not impermissibly delegate to the probation officer the authority to order any treatment, in-house or otherwise. The conditions only authorize the supervision of such treatment. Thus, on the majority's reasoning, the district court did not plainly err in imposing conditions that could be construed otherwise.

The majority also states that sentencing conditions must be evaluated as

4

written and not assumed to be interpreted contrary to their plain language. Maj. at 8. I agree because this embodies plain-error review. *See Cope*, 527 F.3d at 958. But the majority's analysis goes far beyond the plain language and incorrectly holds that a district court plainly errs when imposing any condition that could be read to delegate—even when the language does not definitively indicate impermissible delegation. *Compare Esparza*, 552 F.3d at 1091 *with* Maj. at 14–15. This is a dangerous holding. Under plain-error analysis, it is not enough for a condition to be reasonably interpreted in some way; it must plainly, without question or ambiguity, be so interpreted. *See United States v. Charles,* 581 F.3d 927, 933–34 (9th Cir. 2009) (quoting *United States v. De La Fuente,* 353 F.3d 766, 769 (9th Cir. 2003)).

Here, the majority's conclusion is neither "clear-cut" nor "obvious" as required for plain error. *Turman*, 122 F.3d at 1170. The bulk of the majority's reasoning underscores this. For example, the majority concedes that the breadth of the probation officer's discretion "*could* include choosing inpatient or outpatient treatment," and "it is *not clear* that the district court intended to give the probation officer such broad discretion." Maj. at 12–13 (emphases added). Such concessions highlight that any error, if it exists at all, is not plain. *See Puckett v. United States*, 556 U.S. 129, 135 (2009) (an error is not plain if it is "subject to reasonable dispute").

B

5

Precedent applying plain-error review of sentencing conditions further illuminates my concern with the majority's analysis. Crucially, "[a]n error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." *De La Fuente,* 353 F.3d at 769 (citation omitted). That is precisely the case here.

First, our precedents. Aside from *Cope* and *Daniels*, in *Esparza*, we invalidated a sentencing condition that required the defendant to participate in a counseling or sex offender treatment program, "which may include inpatient treatment, as approved and directed by the Probation Officer." 552 F.3d at 1091. The *Esparza* panel found that the condition's language impermissibly delegated to a nonjudicial officer because it would allow the probation officer to confine the defendant to inpatient treatment, which affected a significant liberty interest. *Id.* But the panel emphasized that this delegation was explicit. *See id.* The sentencing conditions here do not authorize the probation officer to "approve" or "direct" the program but merely supervise the program. And in *United States v. Stephens*, we held that "where the court makes the determination of whether a defendant must abide by a condition . . . it is permissible to delegate to the probation officer the details of where and when the condition will be satisfied." 424 F.3d 876, 880 (9th Cir. 2005). The sentencing conditions delegate no more authority to the probation officer than is permitted under *Stephens*.

6

The challenged conditions here direct the probation officer to "supervise" Nishida's "participation in the program." But they make no mention of the probation officer's ability to direct, order, require or a whole host of words that could constitute an impermissible delegation regarding inpatient treatment. The most natural reading is that the conditions merely delegate permissible treatment details. Indeed, the conditions permit the probation officer to determine the "provider, location, modality, duration, and intensity" of Nishida's treatment. None of these terms delegate to the probation officer the impermissible duties at issue in *Esparza*. Rather, this follows the *Stephens* "where and when" standard. 424 F.3d at 880.

The Tenth Circuit has confronted this question in *Mike*. 632 F.3d 686. At issue there were two conditions. The first, the "sex offender condition," required the defendant to "immediately undergo a psychosexual evaluation upon release and begin participating in sex offender treatment, consistent with the recommendations of the psychosexual evaluation, and . . . submit to clinical polygraph testing and any other specific sex offender testing, as directed by the probation officer." *Id*. at 690. The second, the "mental health condition," required the defendant to "participate in a mental health program, which may include outpatient counseling, residential placement, or prescribed medication as approved by the probation officer." *Id.* The court analyzed the sex offender condition under abuse of discretion but the mental health condition under plain error. *Id*. at 691.

7

The *Mike* court distinguished the two provisions from our holding in *Esparza*. On the sex offender condition, it concluded that "[t]he condition in this case, unlike the one in *Esparza*, does not explicitly state that the probation officer has the discretion to force Mike to participate in residential treatment. . . . However, due to its open-ended language, the condition could be read to delegate such discretion. . . ." *Id*. at 696. The court followed our methodology in *Daniels* and failed to find even an abuse of discretion–let alone plain error–because "[w]hen reviewing challenges to non-specific, all-encompassing conditions like the one here, other courts have opted to construe them in a manner that does not make them infirm." *Id*. (citing *Daniels*, 541 F.3d at 926). The Tenth Circuit saw no reason to require "district courts to include language eliminating all potential forms of treatment not contemplated at the time of sentencing." *Id*. (quoting *United States v. Villamil*, 383 F. App'x 632, 633 (9th Cir. 2010)).

In evaluating the mental health condition, the *Mike* court found error but refused to find it plain. *See id*. at 699. It held that the condition was erroneous because the court expressly left the decision of whether the program would be residential to the probation officer. *See id*. This error, however, was not plain because at the time of appeal, the circuit had not decided the issue and there appeared to be a split in the circuits. *Id*. at 699 n.6 (comparing *United States v. Cutler*, 259 F. App'x 883, 887 (7th Cir. 2008), and *United States v. Calnan*, 194 F. App'x 868,

8

870–71 (11th Cir. 2006), with *Esparza*, 552 F.3d at 1091).

While not precedential, the reasoning in these unpublished cases support that there was no plain error here. In *Cutler*, the court addressed a sentencing condition that ordered the defendant to "spend the first six months of supervised release in an Intensive Drug Treatment Program." 259 Fed. App'x. at 887. It then specified: "The defendant shall participate as directed and approved by the probation officer in treatment for narcotic addiction, drug dependence, or alcohol dependence . . ." *Id.* at 887. The court found that the condition was not an impermissible delegation; it simply allowed the probation officer to approve particular treatment programs. *See id.* (citing *Stephens*, 424 F.3d at 880). Similarly, the Eleventh Circuit in *Calnan* evaluated a sentencing condition provision requiring that the defendant "shall participate in an approved treatment program for drug and/or alcohol abuse as directed by the United States Probation Officer." 194 F. App'x at 870. The court concluded that this was not plain error because it merely delegated the details of the drug treatment program. *See id*. at 871. These cases highlight that, absent an unquestionable delegation, courts are not inclined to find plain error.

The courts that have struck similar conditions have done so under less deferential standards of review than plan error. The Second Circuit addressed a sentencing condition that left "to the discretion of Probation" whether an inpatient or outpatient program was "most appropriate." *United States v. Matta*, 777 F.3d

9

116, 121 (2d Cir. 2015). The Second Circuit applied a "relaxed plain error standard," which the court noted was a less deferential review than plain error as we apply here. *See id*. (internal citations omitted). The court found that this condition impermissibly delegated the decision of whether to require inpatient treatment to the probation officer. *See id*. at 123. The *Matta* condition, unlike Nishida's, expressly delegated the choice of in or outpatient treatment to the probation officer.

The Fifth Circuit most recently confronted a sentencing condition most analogous to Nishida's in *United States v. Martinez*, 987 F.3d 432, 435–36 (5th Cir. 2021). That sentencing condition stated: "You must participate in an inpatient or outpatient substance-abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program, including the provider, location, modality, duration, and intensity." *Id*. at 434. The Fifth Circuit found that the condition impermissibly gave the probation officer the choice between inpatient and outpatient drug treatment. *See id*. at 435.

But again, the *Martinez* condition is distinguishable: It expressly noted that the defendant must seek inpatient or outpatient treatment. In contrast, Nishida's conditions are silent on the type of treatment required. It is thus possible that the probation officer's supervisory powers in Nishida's conditions only pertain to outpatient treatment. This plausible reading of Nishida's conditions insulates any potential error from being plain.

10

Additionally, the *Martinez* court applied abuse of discretion review, not plain error. *Id*. at 434. Because plain-error review is more deferential than abuse of discretion, *Martinez* is not instructive for our review under plain error. *Cf. United States v. Autery*, 555 F.3d 864, 873 (9th Cir. 2009) (finding that since there was no abuse of discretion, *a fortiori* there was no plain-error).

In sum, the majority has staked out the most aggressive position of any court in reversing the district court. No other court has reversed a similar condition under plain error. Those courts that have applied plain-error review have declined to find impermissible delegations because any error, to the extent it exists at all, was not plain enough to meet the standard. *See, e.g.*, *Mike*, 632 F.3d at 699. This underscores that there is no controlling authority on this question. At best the precedent points to conflicting results. Thus, under plain-error review, Nishida's sentencing conditions do not clearly violate constitutional bounds.

The majority instead points to our unpublished opinion in *United States v. Scates*, No. 20-10427, 2021 WL 4938110, at *1 (9th Cir. Oct. 22, 2021). But *Scates* provides no shelter.[1] To begin with, the *Scates* panel did not apply plain-error review. *Id*. The panel instead concluded that "[a]bsent explicit limitations on the

---

[1] As an unpublished opinion, *Scates* has no precedential value. Because unpublished decisions are not controlling, they cannot establish plain error. The reasoning in unpublished decisions may, however, support that reasonable jurists disagree and therefore no plain error exists. *See supra* at 9.

11

scope of treatment, it is reasonable to construe 'location, modality, duration, and intensity' to encompass inpatient confinement." *Id*. By applying this "reasonably construed" standard, the panel concluded that the conditions "impermissibly delegated to the probation officer the power to decide 'the nature [and] extent of the punishment to be imposed.'" *Id*. (quoting *Esparza*, 552 F.3d at 1091). Even so, any reliance on *Scates* is misplaced: Under plain-error review, error must be plain—not reasonably construed as such.

Ultimately, *Scates* does nothing to undermine the fact that no court to review similar sentencing conditions has found plain error. *See, e.g.*, *Mike*, 632 F.3d at 699; *Daniels*, 541 F.3d at 926; *Villamil*, 383 F. App'x at 633 ("[T]here is no authority requiring district courts to include language eliminating all potential forms of treatment not contemplated at the time of sentencing."). This reinforces that there is no controlling authority, and precedent points in conflicting directions. For this reason alone, any potential error here cannot be plain. *See Charles*, 581 F.3d at 933–34 ("An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." (quotation omitted).

C

The majority attempts to resolve these inconsistencies by questioning who, if not the probation officer, retains authority to determine Nishida's treatment. Maj. at

12

It concludes that because the district court gave no indication that it was retaining authority to determine whether Nishida should receive inpatient treatment that the conditions plainly constitute an unconstitutional delegation. Maj. at 14–15.

Yet the majority acknowledges that "the record is not definitive regarding the district court's intent" on this issue. Maj. at 14. That concession undermines the majority's reasoning. It is more reasonable to assume that the district court would retain jurisdiction. The majority's judicial guessing games are not within our province, especially under plain-error review.

I would affirm the district court and therefore respectfully dissent.